*LANSING, Ch. J. and LEWIS, J. were of the same [*321] opinion.

RADCLIFF, J. was absent.

Rule granted.(*a*)(*b*)

JACKSON, *ex dem.* POTTER and others, *against* SISSON.

A patent for certain lands was granted to A. B. and C. for themselves and their associates, being a settlement of friends on the west side of Seneca lake, to have and to hold the same to A. B. and C. as tenants in common, and their associates ; it was held, that no *legal* estate vested, except in the three persons named in the patent.

An equitable title cannot prevail in ejectment, against the legal estate, especially if such equitable estate be dubious.

THIS was an action of ejectment for lands in the town of Jerusalem, in the county of Ontario.

The declaration stated, 1. A demise, by William Potter, for lot No. 16 in the gore land granted by letters patent to James Parker, William Potter and Thomas Hathaway, and their associates ; 2. A demise by the above three persons, and five others.

On the trial, at the Ontario circuit, in June, 1800, the defendant admitted himself to be in possession of lot No. 16,

and the lessor of the plaintiffs produced the letters patent for the premises in question, bearing date the 10th day of October, 1792, by which the same were granted, by metes and bounds, to James Parker, William Potter and Thomas Hathaway, for themselves and their associates, being a settlement of friends on the west side of the Seneca lake ; to have and to hold the same unto the said three persons, as tenants in common, and not as joint-tenants, for themselves and their associates as aforesaid, in fee.

The plaintiff then produced a deed from James Parker and Thomas Hathaway, bearing date the 16th August, *1793, conveying to William Potter, in fee, for a valuable consideration, lot No. 16 aforesaid.

[*322]

The defendant then offered sundry letters from James Parker, one of the patentees aforesaid, between the 17th October, 1787, and the 4th March, 1788, addressed generally to the Universal Friends, and relating to the settlement of the friends on the west side of the Seneca lake.   He also offered three petitions from James Parker, in the name of the settlement, and addressed to the commissioners of the land office, bearing date in April and May, 1791, respecting the purchase of lands of which the premises are a part, and an acceptance of his proposal by the commissioners of the land office, at a meeting held on the 9th May, 1791.

The contract with the commissioners was fulfilled by the society, of which James Parker appeared to be the principal member, on the 29th February, 1792.   By another letter of James Parker, addressed to the commissioners on the 15th September, 1792, he stated his former contract with the commissioners for 12,000 acres of land, for himself and his associates, and named the other two patentees and the present defendant.

The community of friends met on the 27th October, 1791, among whom was William Potter, one of the lessors of the plaintiff.   They came to sundry resolutions, by which they appointed the other two patentees above named a committee to receive the contract from Parker, and to indemnify him for his contract with the commissioners of the land office,

and compensate him for his trouble ; and directed the members of the community to pay their proportion of the expense of the lands, and that they should receive land in proportion to their advances.

The defendant paid 20 dollars to William Potter, on the 22d November, 1791, towards his proportion of the purchase-money of the lands ; and he paid, at another time, seven dollars and fifty cents. At the time the letters *patent issued, there was a settlement of friends on [*323] the land contained in the patent, and the defendant was one of that society.

There were then offered in evidence, on the part of the plaintiff, sundry resolutions of the society, and among others a resolution made at a meeting on the 15th August, 1793, at which the defendant was present, and by which it was resolved that the lands should be divided into 12 parts ; and the same was done accordingly, and ballots were drawn with the approbation of the meeting, by which lot No. 16, being the premises in question was included in class No. 10, and fell to William Potter, one of the lessors of the plaintiff ; and the defendant had allotted to him an interest in class No. 5, containing two lots. The defendant advanced only 37 dollars and 50 cents, and the said William Potter about 2,000 dollars, or above a moiety of the whole purchase-money.

Upon these facts, a verdict was taken for the plaintiff, by consent, subject to the opinion of the court, as to the competency and sufficiency of the evidence above stated.

*Emott*, for the plaintiff.

*Riggs*, contra.

KENT, J. I shall confine myself to one or two points, which appear to be sufficient to determine the cause.

There was no legal estate created by the patent, but what vested in the three patentees named. The description of the association, by the words, " a settlement of friends on the west side of the Seneca lake," was too vague and uncertain to constitute a competent grantee at law, or a *cestuy que use*, whose estate the statute would transfer into possession. (Saunders on Uses, 63, 128.) This would be like a grant

[*324]   to the parishioners, or inhabitants *of a dale, or to the commoners of such a waste, or to the church-wardens of a parish, which are held to be void grants. (Shep. Touch. 235, 236.) But the grant from the state is not to the three patentees named and *to* their associates. It is to James Parker, William Parker and Thomas Hathaway, for themselves and their associates, being the settlement aforesaid ; and therefore, from the words of the grant, as well as from the uncertainty of the description, it is evident the associates had only an interest in equity, and that Parker and the others were vested with the legal estate as trustees for the association.

What, then, are the equitable rights of the associates, and how far the trust has been executed by the grantees, are questions that do not belong to this court to decide, nor shall I undertake to give any opinion upon them.

A court of law is incompetent to settle the complicated and interfering interests of the parties to the trust. *Our* duty is, therefore, to look to the legal estate, and to give it effect.

But it is said that this court ought to look so far to the equitable rights of the parties as to protect a *cestuy que trust,* in possession, against the legal estate of his trustee.

There are several cases in which courts of law have recognised and helped the equitable estate of a party ; but in those cases the equitable interest was clear and precise. In the case of *Lade* v. *Holford,* (Bull. N. P. 110,) the principle decided by Lord Mansfield was, that where the beneficial occupation of an estate may possibly suppose a conveyance to the person equitably entitled to it, the jury may be directed to presume one. This doctrine, however, proceeds on the ground of the conclusive efficacy of the legal estate in a court of law ; and it has accordingly received the subsequent approbation of Lord Kenyon, (2 Term Rep. 696 ; 8 Term Rep. 122,) who has taken great pains to preserve unimpaired the marked boundaries between the courts of law and of

[*325]   equity. In the *case of *Armstrong, ex dem. Tinker* v. *Pierce,* (3 Burr. 1901,) the court of K. B. looked

upon it as a settled point, that the formal title of a trustee should not, in an ejectment, be set up against the *cestuy que trust*, because, from the nature of the two rights, the *cestuy que trust* is to have the possession. This position does not apply to the present case, because it does not appear that the defendant was to have possession of the premises in question. And, besides, the position is too general. It requires, and always has received qualification, in its application to particular cases; for the court of K. B. afterwards, in the cause of *Goodtitle, ex dem. Estwick* v. *Way*, (1 Term Rep. 737,) observed, that the only cases where the principle had been adopted were such in which the lessor of the plaintiff had been clearly and unequivocally a trustee for the defendant; and it would have been, of course, for the court of chancery to have decreed a conveyance to him; and in that case, as it was at least a doubtful equity which the defendant set up against a legal title, the court would not interfere.

Again, in the case of *Doe, on the demise of Bristow*, v. *Pegge*, (1 Term Rep. 758, in note,) it was decided that where a legal term was created for a particular purpose, if the purpose was satisfied, or if it was unsatisfied and not connected with the litigating parties, it should never be set up against them in ejectment.

It is obvious that this case does not apply, for here the trust itself is the thing in litigation, and these are the strongest decisions that have regarded and given effect to equitable titles, in an action of ejectment. Even this latter decision has since been receded from, and the party clothed with the legal estate has repeatedly been permitted to prevail against any equitable title; (2 Term Rep. 684; 7 Term Rep. 43, 47; 8 Term Rep. 2, 122;) and the only way in which it can now be assisted is, by permitting the jury, in certain cases, to presume the *legal estate not to exist any [*326] longer out of the *cestuy que trust*.

Whether this court ought to follow the former or the latter decision, it will be in season to determine when the question arises. At present, it is sufficient to say that no case goes so far as to permit an equitable claim, so involved and

dubious as the present one, which is litigated between the parties, to prevail against the legal estate.(a)

I am of opinion, therefore, that the verdict for the plaintiff ought not to be disturbed.

LANSING, Ch. J. was of the same opinion.

LEWIS, J. was of opinion that a good estate *in law* was vested in Parker and his associates, under the patent, according to the description ; but he agreed that the plaintiff was entitled to recover as tenant in common.

RADCLIFF, J. was absent.

Judgment for the plaintiff.

(a) In order to enable a claimant to support an action of ejectment, he must be clothed with the legal title. (Adams on Ejectment, 32. Roscoe on Actions relative to real property, 490. *Goodtitle ex dem. Jones* v. *Jones,* 7 T. R. 43, 47. *Doe ex dem. La Costa* v. *Wharton,* 8 id. 2. *Doe ex dem. Reade* v. *Reade,* id. 118, 123. *Doe ex dem. Blake* v. *Luxton,* 6 id. 289. *Doe ex dem. Shewen* v. *Root,* 5 East, 138, overruling the doctrine of Lord Mansfield's time. *Lade* v. *Holford,* B. N. Prius, 110. *Keech ex dem. Hall* v. *Warne,* Dougl. 21. *Doe ex dem. Bristowe* v. *Pegge,* 1 T. R. 759 (n.) *Jackson ex dem. Smith* v. *Pierce,* 2 Johnson, 221. *Jackson ex dem. Simmons et al.* v. *Chase,* id. 86. *Jackson ex dem. Whitlock* v. *Deyo,* 3 Johnson, 422, 423. *Jackson ex dem. Kemball* v. *Van Slyck,* 8 Johnson, 487. *Jackson ex dem. Livingston* v. *Sclover,* 10 Johnson, 368. *Jackson ex dem. Colden* v. *Paul,* 2 Cowen, 502. *Thompson* v. *Wheatley,* 5 Smedes and Marshall, 489. *Winn* v. *Cole,* Walker, 119. *Lessee of Spencer* v. *Mackle,* Ohio, Con. R. 356. *Jared* v. *Goodtitle,* 1 Blackford, 29. *Doe ex dem. Wood* v. *West,* id. 133. *Sims* v. *Irvine,* 3 Dallas, 425. *Cooper* v. *Galbraith,* 3 Wash. C. C. 546. *Botts* v. *Shields,* 3 Little, 32. *Eggleston* v. *Bradford,* 10 Ohio, 312. *Wilson* v. *Julves,* 11 Gill & Johnson, 351.)

Many other cases might be cited if it were desirable to confirm this principle, which is so fixed and immutable, that a trustee may maintain ejectment against his *cestuy que trust.* (See Adams, *ut sup.* Roscoe, *ut sup.* Roe *ex dem. Reade* v. *Reade,* 7 T. R. 118, 123.) And a trustee holding the legal title may maintain ejectment even after the trust is satisfied. (*Hopkins, &c.* v. *Stephens et al.* 2 Randolph, 422. See farther, on this subject, Tillinghast's Adams on Ejectment, ed. 1846, p. 32.)