## THE LADY SUPERIOR OF THE CONGREGATIONAL NUNNERY OF MONTREAL *vs.* McNAMARA and others.

A deed may be delivered to a stranger, for the grantee named therein, without any special authority from the grantee to receive it for him. And if the grantee assents to it, afterwards, the deed is valid from the time of the original delivery.

Such assent will be presumed, from the beneficial interest of the grantee in the deed, unless a dissent is proved.

Where the payee of a bond and mortgage, given for the benefit of a third person, has consented, beforehand, to take such bond and mortgage for the purpose of assigning them to the person whose debt is intended to be secured thereby, it is not necessary that any particular formality should be observed in delivering the instruments and obtaining his assignment thereof. Placing them before him, for his signature to the assignment, is a good delivery; and his executing such assignment is an absolute acceptance by him of the bond and mortgage.

The delivery of the assignment to the mortgagor, for the benefit of the assignee, is also a good delivery of the assignment, to the latter, by the mortgagee. And the bringing of a suit by the assignee to foreclose the mortgage, as such assignee thereof, is an assent to the assignment; and relates back to the time when such assignment was delivered to the mortgagor for the benefit of the real party for whose security the mortgage was given.

It is not a valid objection to an assignment of a bond and mortgage, especially in a court of equity, that the assignee is not described therein by name. It is sufficient if the assignment is made to a person in a particular character sustained by him; provided the description identifies the assignee with as much certainty as if he had been described by name.

Where a deed is delivered to a third person, without any authority from the grantee, who refuses to accept or ratify the deed, such delivery is invalid.

THIS case came before the chancellor upon an appeal, by E. Wolcott, one of the defendants, from a decree of the late vice chancellor of the eighth circuit. The bill was filed by the Sister Frances Huot, also called, or named, St. Gertrude, the Lady Superior of the Congregational Nuns at Montreal, in Canada East, to foreclose a mortgage; and the facts in the case, as they appeared by the pleadings and proofs, were substantially as follows:

P. J. McNamara of Rochester, in the county of Monroe, being indebted to the ladies of the Congregational Nunnery in Montreal, for the board and education of his daughters, and having received a letter from their agent at Montreal, urging him to

pay or secure the debt without delay, called upon P. G. Buchan to draw a bond and mortgage, upon certain real estate of Mc-Namara in Rochester, to be given to them. Buchan suggested that if the bond and mortgage were given directly to the ladies of the nunnery there might be a difficulty in obtaining an acknowledgment of satisfaction so as to have the mortgage cancelled on the records, after it should have been paid. He therefore proposed that McNamara should get some person in whom the ladies of the nunnery would have confidence, to take the mortgage in his own name, for their benefit, and then to assign it to the lady superior of the nunnery, by an assignment which should not be recorded ; so that the nominal mortgagee could acknowledge satisfaction of the mortgage when the debt should have been paid. McNamara accordingly called upon J. Allen of Rochester, who consented to take the bond and mortgage in his own name, and to make an assignment thereof to the lady superior of the nunnery ; in conformity with that suggestion. The bond and mortgage were accordingly executed by McNamara and wife, and duly acknowledged and recorded, on the 27th of July, 1840. And Allen, on the same day, whether before or after the recording of the mortgage did not appear, upon the same being presented to him, executed an assignment thereof under his hand and seal, and endorsed upon the mortgage, assigning the bond and mortgage to the complainant, and immediately delivered the papers to McNamara for the assignee. Buchan also wrote a letter to the agent of the ladies of the nunnery at Montreal, and delivered it to Mc-Namara to be forwarded to him with the papers, explaining the reason why the papers were executed in that form ; stating also that the property mortgaged was ample security for the debt, and that Allen was a gentleman of wealth and integrity. There was no direct evidence of the time when the bond and mortgage and assignment were sent to the ladies of the nunnery, or their agent at Montreal. But after they became due and payable, they were sent by mail from the lady superior at Montreal to the Rev. B. O'Riley, at Rochester, to be delivered to a lawyer there for collection ; with a formal power of attorney, from her

The Lady Superior, &c. *v.* McNamara.

to such attorney, to collect the amount due, &c. and acknowledged before the mayor of Montreal.

Soon after the giving of the bond and mortgage, the appellant E. Wolcott recovered a judgment against the mortgagor. And in March, 1841, the mortgaged premises were sold by the sheriff, under an execution upon that judgment, and were purchased by the defendant Wolcott, who received the sheriff's deed therefor in June, 1842. The bill was taken as confessed against McNamara and his wife; but E. Wolcott put in an answer alleging that there was no such person in existence as the complainant, and that the bond and mortgage were given to Allen to defraud Wolcott as a creditor. But no evidence was adduced to establish the alleged fraud. Wolcott's solicitor also stipulated to admit, upon the hearing, that at the date of the mortgage, and ever since, the complainant was a real person. And that at the time of the date of the bond and mortgage and of the assignment thereof she was, and ever since had been, the lady superior of the Congregational Nunnery at Montreal, and as such authorized by the laws of Canada to sue for, collect, and receive debts due to the nunnery; but that the complainant was not a citizen of the United States, but an alien.

The vice chancellor made the usual decree for the foreclosure of the mortgage and the sale of the mortgaged premises, for the payment of the amount due to the complainant upon the bond and mortgage.

*S. Boughton,* for the appellant.

*C. M. Lee,* for the respondent.

THE CHANCELLOR. The execution of the bond and mortgage to Allen, under the circumstances disclosed in this case, constituted him a trustee for the ladies of the nunnery whose debt was intended to be secured thereby; so that if he had neglected to execute the assignment pursuant to the arrangement, or if, for any reason, the assignment executed by him was technically invalid, such bond and mortgage would still have cre-

ated a lien upon the mortgaged premises from the time of the recording of the mortgage. · And a court of equity would have compelled Allen either to execute a valid assignment of such bond and mortgage, or would have decreed a foreclosure thereof for the benefit of those whose debt was intended to be secured thereby. The delivery of the bond and mortgage to Allen, the nominal mortgagee, to enable him to execute the assignment endorsed upon the mortgage, was a sufficient delivery to, and an acceptance thereof by Allen, to give effect to those instruments; especially when the mortgage was acknowledged by the mortgagor and put upon record for the purpose of giving effect to it as a valid security. A deed may be delivered to a stranger, for the grantee named therein, without any special authority from the grantee to receive it for him. And if the grantee assents to it afterwards, the deed is valid from the time of the original delivery. *Omnis ratihabitio retro trahitur et mandato seu licentia equiparatur.* ( *Wing. Max.* 485.) It is upon this principle that it has frequently been held that a delivery of a deed to the proper recording officer to be recorded, if intended to vest the title immediately or absolutely in the grantee, either as a trustee or otherwise, is a valid delivery; if not afterwards dissented from by the grantee. ( *Tompkins* v. *Wheeler,* 16 *Peters' Rep.* 106. *Ingram* v. *Porter,* 4 *McCord's Rep.* 198. *Dawson* v. *Dawson, Rice's Eq. Rep.* 244.) Here the nominal mortgagee, Allen, had consented beforehand to take the bond and mortgage for the purpose of assigning them to the complainant. It was not necessary, therefore, in consummating the arrangement, that any particular formality should be observed at the time the bond and mortgage were presented to him to obtain his assignment thereof. For the placing them before him to obtain his signature to the assignment was a good delivery, and his signature to the assignment was an absolute acceptance by him. The delivery of the assignment to McNamara, for the benefit of the complainant, was also a good delivery of the assignment to her, unless she dissented; of which there is no pretence in this case. And the act of bringing this suit to foreclose the bond and mortgage, as the assignee thereof, was of itself

an assent to the assignment to her; and relates back to the time when such assignment was delivered to McNamara for her benefit. Besides, there is in this case evidence from which it may fairly be inferred that the bond and mortgage, with the assignment, were transmitted to the agent of the ladies of the nunnery at Montreal, and received by the complainant immediately after their execution.

But even if the complainant had never heard of this bond and mortgage and assignment until after the recovery of the appellant's judgment against McNamara, it would not have altered her legal and equitable rights in this case. For the absolute delivery of the bond and mortgage to Allen, in trust to assign the same to her, and the delivery of the assignment to McNamara for her use, vested the title thereof in her immediately on such delivery of the assignment, although it was delivered to the mortgagor. For if he had afterwards refused to deliver this assignment to her she might have compelled its delivery by suit. The cases of *Doe, ex dem. Garnous,* v. *Knight,* (5 *Barn. & Cress.* 671,) and of *Church* v. *Gillman,* (15 *Wend. Rep.* 656,) are directly in point to show that a deed absolutely delivered to a third person, for the use of the grantee, is a present deed and takes effect from the time of such delivery, although such third person was not authorized by the grantee to receive it; if such grantee afterwards assents to it. Such assent will also be presumed from the beneficial interest of the grantee or obligee in the deed, unless a dissent is proved.

Some of the earlier cases on this subject went even so far as to declare that the delivery of the deed to a stranger, for the use of the grantee, made it a good deed *in presenti,* although the grantee refused to accept it when offered to him by such third person. (*Taw, executrix,* v. *Bury, Anderson's Rep.* 4; 2 *Dyer,* 167, *b, S. C.*) But it was afterwards held, that where a deed was delivered to a stranger who had no authority to receive it for the grantee, and such grantee refused to receive it, the delivery was invalid, and the deed lost its force. (*See Butler and Baker's case,* 3 *Coke's Rep.* 26, *b; Whelpdale's case* 5 *Idem,* 119, *b; and per Holt, C. J.,* 1 *Salk.* 307.)

The Lady Superior, &c. *v.* McNamara.

It is no valid objection to this assignment, especially in this court, that the complainant was not described therein by name. It is admitted that at the time of the execution of the bond and mortgage, and the assignment, she was the lady superior of the Congregational Nunnery of Montreal, and authorized by the laws of Canada to receive and collect the debts due to the ladies of that institution. An assignment to her by that description identified the assignee with as much certainty as if she had been described by her name. In the case of *Shaw and others* v. *Loud,* (12 *Mass. Rep.* 447,) where a bond and mortgage had been given to the plaintiffs by the description of the heirs at law of John Tyrrel, without mentioning any of their names, he being dead at the time of giving such bond and mortgage, the court held the securities to be valid. And Chief Justice Parker, who delivered the opinion of the court, says a deed made to *the heirs at law,* of a deceased person, is good; because the persons who are to take can be ascertained by extrinsic testimony. In the case of *Stromour* v. *Rottenbury,* (4 *Dess. Rep.* 268,) the court of chancery in South Carolina held that a deed of slaves, to the grantees therein, by no other name than that of the grandchildren of the grantor by his daughter Catherina; was valid, and conveyed the property to her children who were in esse at the time of the execution of the deed. And a similar decision was made in the case of *Hagg and wife* v. *Odom,* (*Dudley's Geo. Rep.* 185;) where the grantees were not named by the grantor, but were described as *the children of Nancy Jones.* But a grant to an individual named, and his associates, appears to be too uncertain and in definite to convey any thing to others than the individual named in the deed. (*Duncan* v. *Beard,* 2 *Nott & McCord's Rep.* 400.)

There is no foundation for the suggestion that McNamara intentionally gave the bond and mortgage for more than was actually due, for the purpose of defrauding his creditors. The admission of the indebtedness by McNamara, at the time of the giving of the bond and mortgage, as the same was stated in the letter to him from the agent of the ladies of the nunnery at Montreal, and the execution of those securities for that amount

The Lady Superior, &c. *v.* McNamara.

was sufficient evidence of the indebtedness, not only against the mortgagor but also as against the appellant who claimed under him, through the subsequent judgment. The stipulation of the appellant to admit that a certain sum was due, was not an admission on the part of the respondent that the whole amount mentioned in the bond and mortgage was not actually due. Her counsel, therefore, if he had thought proper, might have claimed the whole sum secured by the bond and mortgage, with interest thereon. But as the complainant only asked for a decree for the smaller sum mentioned in the stipulation given by the adverse party, the probability is that some mistake had occurred in stating the account, or in reducing the Canada currency, in which the account was stated in the letter of the agent, into dollars and cents. Such an error, however, if it occurred, would not render the deed fraudulent.

There is therefore no error in the decree appealed from, and it must be affirmed with costs. And if the proceeds of the mortgaged premises, upon a sale thereof under the decree, should not be sufficient to pay the amount due upon such decree and the costs, together with the expenses of the sale, the appellant must pay to the respondent the value of the rents and profits of the mortgaged premises during the time the sale has been suspended by this appeal, or so much of the value of such rents and profits as may be necessary to pay the deficiency; as the respondent's damages for the delay and vexation caused by such appeal. And the respondent is to be at liberty to apply for a reference to ascertain the amount of such damages, if necessary.