# J. A. STOCKTON v. MALCOLM TURNER, Archie J. Gorthy, J. M. Caldwell, and J. Lindberg.

(153 N. W. 275.)

**Written instruments — note — mortgage — legal inception — delivery — intention of parties.**

1. As a general rule, a written instrument such as a promissory note or a mortgage has no legal inception or valid existence until it has been delivered in accordance with the intention of the parties.

**Note — mortgage — makers — title — delivery — acts amounting to.**

2. The makers of a note and mortgage cannot by subsequent conduct or instructions affect or devest title, if, at the time of the execution of the note and mortgage, they have performed acts amounting to a delivery.

**Evidence — mortgage and notes — delivery.**

3. Evidence examined, and *held* that the note and mortgage were delivered to the plaintiff.

**Evidence — consideration.**

4. Evidence examined, and it is *held* that all the defendants received full consideration for the note and mortgage involved in this action.

Opinion filed May 11, 1915.   Rehearing denied June 7, 1915.

From a judgment of the District Court of Foster County, *Nuessle,* Special J., defendants appeal.

Affirmed.

*A. C. Lacy* and *John Carmody,* for appellants.

Every contract on a negotiable instrument is incomplete and revokable until delivery of the instrument for the purpose of giving it effect.   Anderson v. Goodwin, 125 Ga. 663, 54 S. E. 679; Ayres v. Milroy, 53 Mo. 516, 14 Am. Rep. 465; 16 Cyc. 578, 579; Pepper v. State, 22 Ind. 399, 85 Am. Dec. 430; Dixon v. Bristol Sav. Bank, 102 Ga. 461, 66 Am. St. Rep. 193, 31 N. E. 96; Miller v. Sears, 91 Cal. 282, 25 Am. St. Rep. 176, 27 Pac. 589; Wheelwright v. Wheelwright, 2 Mass. 447, 3 Am. Dec. 66; Riggs v. Trees, 120 Ind. 402, 5 L.R.A. 696, 22 N. E. 254; Clements v. Hood, 57 Ala. 459; Hamill v. Thompson, 3 Colo. 518, 14 Mor. Min. Rep. 696; Hansford v. Freeman, 99 Ga. 376, 27 S. E. 706; Mays v. Shields, 117 Ga. 814, 45 S. E. 68; Daniels v. Gower, 54 Iowa, 319, 3 N. W. 424, 6 N.

30 N. D.—41.

W. 525; Daggett v. Daggett, 143 Mass. 516, 10 N. E. 311; Davis v. Kneale, 103 Mich. 323, 61 N. W. 508; Hoit v. McIntire, 50 Minn. 466, 52 N. W. 918; Matteson v. Smith, 61 Neb. 761, 86 N. W. 472; United States v. Payette Lumber & Mfg. Co. 198 Fed. 881; Boswell v. Pannell, — Tex. Civ. App. —, 146 S. W. 233; Carpenter v. Carpenter, 141 Wis. 544, 124 N. W. 488.

There was no meeting of minds as to the amounts that were due under exhibit 1. It is the requisite of all contracts that the minds of the contracting parties must meet and consent to the same thing and at the same moment of time. Newlin v. Prevo, 90 Ill. App. 515; Peerless Glass Co. v. Pacific Crockery & Tinware Co. 121 Cal. 641, 54 Pac. 101; Wagner v. Egleston, 49 Mich. 218, 13 N. W. 522; Board of Trade v. DeBruyn, 138 Mich. 187, 101 N. W. 262; Green v. Cole, 103 Mo. 70, 15 S. W. 317; Sutter v. Raeder, 149 Mo. 297, 50 S. W. 813; Brophy v. Idaho Produce & Provision Co. 31 Mont. 279, 78 Pac. 493; Krum v. Chamberlain, 57 Neb. 220, 77 N. W. 665; McGavock v. Morton, 57 Neb. 385, 77 N. W. 785; Columbus, H. Valley & T. R. Co. v. Gaffney, 65 Ohio St. 104, 61 N. E. 152; Foshier v. Fetzer, 154 Iowa, 147, 134 N. W. 556; Jules Levy & Bro. v. A. Mautz & Co. 16 Cal. App. 666, 117 Pac. 936; Cunningham Mfg. Co. v. Rotograph Co. 30 App. D. C. 524, 15 L.R.A.(N.S.) 368, 13 Ann. Cas. 1147; Luckey v. St. Louis & S. F. R. Co. 133 Mo. App. 589, 113 S. W. 703; Miller v. Sharp, 52 Ind. App. 11, 100 N. E. 108; Elks v. North State L. Ins. Co. 159 N. C. 619, 75 S. E. 808.

*Edward P. Kelly,* for respondent.

Formal delivery of a deed to the grantee in person is unnecessary. If the grantor in the deed intends, when executing it, to be understood as delivering it, that is sufficient. The intention of the party is the controlling element. Walker v. Walker, 42 Ill. 311, 89 Am. Dec. 445; Rushin v. Shields, 11 Ga. 636, 56 Am. Dec. 436; Wall v. Wall, 30 Miss. 91, 64 Am. Dec. 147.

Leaving a deed duly acknowledged, signed, and sealed in the possession of the officer who takes the acknowledgment, without the grantor doing or saying anything to qualify the delivery, is not a mere delivery in escrow. Blight v. Schenck, 10 Pa. 285, 51 Am. Dec. 478; Lady Superior of Cong. Nunnery v. McNamara, 3 Barb. Ch. 375, 49 Am. Dec. 184; Doe ex dem. Newlin v. Osborne, 49 N. C. (4 Jones,

L.) 157, 67 Am. Dec. 269; Burke v. Adams, 80 Mo. 504, 50 Am. Rep. 510.

The unauthorized delivery of a deed may be ratified by the grantor, as by an acceptance of the consideration from the grantee. Van Amringe v. Morton, 4 Whart. 382, 34 Am. Dec. 517.

Where parties agree upon the general terms of a contract, they are bound by it, although their understanding of its terms is not precisely the same. Neufville v. Stuart, 1 Hill, Eq. 159.

Whether the minds of the parties met is a question of fact. Thurston v. Thornton, 1 Cush. 89; Winchester v. Howard, 97 Mass. 304, 93 Am. Dec. 93.

Whatever a man's real intention may be, if he so conducts himself that a reasonable man would believe he was assenting to the terms of the other party, and upon such honest belief such persons contract in reference thereto, he will be bound by such conduct. Phillip v. Gallant, 62 N. Y. 256; Smith v. Hughes, L. R. 6 Q. B. 597, 40 L. J. Q. B. N. S. 221, 25 L. T. N. S. 329, 19 Week. Rep. 1059.

CHRISTIANSON, J. This is an action for the foreclosure of a real estate mortgage upon certain lands in Foster county. The mortgage bears date February 10, 1912, and secures the payment of a note dated on the same day in the sum of $2,883.75, bearing 7 per cent interest. The mortgage was signed by all four defendants named in the title of this action, and the note was signed by the defendants Turner and Caldwell, and payment thereof guaranteed by the defendants Gorthy and Lindberg.

The complaint is in the usual form. The answer admits the execution of the note and mortgage, but alleges that the same were never delivered to the plaintiff, but were placed in the Stutsman County Bank at Courtney, North Dakota, to be delivered to the plaintiff only when certain things should be done by one Coffey, the agent of the plaintiff. It is further alleged that these things were never done, and that the Stutsman County Bank never had authority to deliver the note and mortgage, and that for that reason they were as a matter of fact never delivered to the plaintiff; and, also, that certain payments were made by the defendants, and that the note and mortgage involved in this action are for a larger sum than that which defendants owed

to plaintiff at the time the note and mortgage were executed. The plaintiff obtained a judgment in the district court, and the defendants appeal, and ask for trial *de novo* in this court. A considerable portion of the material facts are not in dispute, but there is some conflict in the testimony on certain incidental questions.

The note and mortgage involved in this action were given as partial payment, upon the balance due on a certain contract, or contracts, for the sale of land in Foster county. On April 12, 1909, one William Jones sold a certain 360-acre tract of land in Foster county to the four defendants named in the title of this action, for the agreed price of $10,800. At the time of the sale the defendants paid $2,000 in cash, leaving a balance of $8,800 remaining unpaid on the contract, payable as follows: $1,800 on December 24, 1909; $1,000 on December 24, 1910; and $6,000 on December 24, 1911. Such deferred payments were evidenced by promissory notes drawing 7 per cent interest, payable on the 24th of December of each year. This contract was offered in evidence on the trial of the action as Exhibit "1," and will be so denominated in our consideration thereof in this opinion. On the 16th day of August, 1910, William Jones, the vendor in Exhibit "1," purchased a 320-acre tract of land from the plaintiff for the agreed price of $12,680. The contract between the plaintiff, Stockton, and Jones, was also offered in evidence upon the trial as Exhibit "E," and will be considered under this designation. Jones at that time assigned to the plaintiff, Stockton, the contract, Exhibit "1," together with the notes mentioned therein, as collateral security for the payments due from Jones to Stockton. The only payments made upon Exhibit "1" and the notes therein described prior to the time of the assignment to the plaintiff, Stockton, were the first payment of $2,000, and $1,362.20 paid to Jones on December 24, 1909.

The defendants, thereafter, also made the following payments to Judge Coffey, who at that time was a practising attorney at Courtney, and represented the plaintiff in this action, to wit, $128.40 on September 8, 1910; $852 on December 24, 1910; $800 on July 24, 1911. These were all the payments made until April, 1912. On or about February or March, 1912, the whole balance of the purchase price under Exhibit "1," including the final payment of $6,000 was past due; and some of the payments under Exhibit "E" were also past due.

According to the computation of the defendants' attorneys, furnished in a supplemental brief filed in this court, there was on the 6th day of April, 1912, due upon Exhibit "1" and the notes covered thereby, a total sum of $7,851.93. Shortly prior to this time the plaintiff's agent, Coffey, was appointed judge of the fifth judicial district in this state, and found it necessary to remove his residence from Courtney to Jamestown, and he thereupon made several efforts to get the defendants together to make a settlement of their equitable interests in the contracts. Prior to this time the defendant Archie J. Gorthy had acquired from William Jones the interest of Jones in the contract, Exhibit "E," and the premises covered thereby. It appears that during February or March, 1912, at the time these negotiations were had, it was suggested by Coffey that these defendants obtain loans on the various lands covered by these contracts for the purpose of paying off encumbrances then outstanding against these lands, and that the balance of the money, if any, realized from such loans, be paid over to Mrs. Stockton to apply upon the balance due her. Judge Coffey testifies that he also suggested that they give a second mortgage upon one of the tracts and obtain some additional money to be paid to Mrs. Stockton, and that she take a second mortgage on the other tract for whatever balance might remain due her. At this stage of the proceedings, Mr. Nichols, president of the Stutsman County Bank at Courtney, was called in by the parties.

It was thereupon agreed that Judge Coffey should procure a deed from Jones for the land described in Exhibit "1," and a deed from the plaintiff, Stockton, for the land described in Exhibit "E." As the defendant Lindberg was living in Montana, it was agreed that for the sake of convenience in executing the mortgage loan papers, the deed from Jones for the land covered by Exhibit "1" was to run to Caldwell and Turner only. This was satisfactory to all the parties, and the deed was so taken, although all four defendants named in the title of this action were apparently still equally interested in and owners of the contract and the land described therein. The defendant Gorthy alone had any interest in the lands covered by Exhibit "E." So, the deed for that tract was, of course, to be executed to him as grantee. Nichols agreed that he would procure loans upon the lands in the amounts which he subsequently did. Judge Coffey procured the deeds

for the respective tracts as agreed upon, and delivered the same to Mr. Nichols. Nichols, also, proceeded to obtain the loans on the lands in question, and placed a first mortgage loan for $4,600, signed by Turner and Caldwell, against the land described in Exhibit "1," and a first mortgage loan for $5,000, and a second mortgage for $3,900, both signed by Gorthy alone, against the land described in Exhibit "E." Nichols was given general authority to go ahead, not only to close the loans, but to disburse the proceeds thereof. It being understood that he was first to pay off certain prior encumbrances against the lands, and pay the balance of the proceeds over to the plaintiff to apply on her claim. It is undisputed that Nichols paid off prior liens and claims against the lands covered by Exhibit "1," aggregating $4,-215.12, which would leave a balance of only $384.88 of the proceeds of the first mortgage loan placed against these premises.

As already stated, a first mortgage for $5,000, and a second mortgage for $3,900, both executed by Gorthy, were placed against the lands covered by Exhibit "E." Nichols paid off prior encumbrances against this land aggregating $4,421, which leaves a surplus of $4,479, realized from the mortgages against the lands covered by Exhibit "E." There was therefore a total surplus of $4,863.88, realized from these three mortgage loans, after deducting the amounts utilized in paying off the prior encumbrances against all the lands. The proceeds realized from all these three mortgages were deposited by Nichols in his bank in a special account denominated the Caldwell-Turner loan account. Nichols drew checks against this account first in paying off the different mortgages, and next in making payments to the plaintiff. He also speaks of advancing moneys at different times.

During the negotiations for an adjustment between Judge Coffey and the defendants, it was agreed that the defendants Turner and Caldwell were to execute a note and second mortgage to the plaintiff, Stockton, upon the lands described in Exhibit "1." Thus far there is no substantial conflict in the testimony. But at this point a dispute arises, which is the reason for this lawsuit. The defendants Turner and Caldwell contend that they were to execute a note and mortgage only for the balance due on Exhibit "1," while Judge Coffey claims that they were to execute a note and mortgage for the amount remaining due to the plaintiff under Exhibit "E."

The defendants also claim that they executed the note and mortgage involved in this case under the belief that the same represented the amount remaining due on Exhibit "1." And they further claim that at the time of the execution of the note and mortgage, the contract, Exhibit "1," was not available, but that Judge Coffey agreed to forward the same from Jamestown, where it was kept among his papers, to Mr. Nichols, and that if any mistake was made in the amount that he would correct it. This is denied by Judge Coffey, who claims that he was not present at the time the note and mortgage were executed, but that he called Mr. Nichols on the telephone and gave him the amounts and dates of the various payments made on the contracts, and in this he is corroborated by Mr. Nichols. It is undisputed that the note and mortgage were drawn by Mr. Nichols, and that he made the computation of the amount remaining due before preparing the same. It is also claimed by the defendants that the note and mortgage involved in this action were delivered to Mr. Nichols conditionally, and that he was authorized to deliver them to Judge Coffey only when Judge Coffey had delivered to him the contract showing the payments made thereon, so that Mr. Nichols could ascertain definitely if the note and mortgage were for the correct amount.

It is doubtless true, as defendants' counsel contend, that a promissory note and mortgage do not become effective until delivered. See §§ 5891 and 6901, Compiled Laws, and First State Bank v. Kelly, ante, 84, 152 N. W. 125. But it is equally true that a delivery having been made, the maker of a note or the mortgagor in a mortgage cannot by subsequent acts or conduct limit the effect of the former delivery. "It is unquestionable law that a deed cannot be made an escrow by any other declarations than are made at the time of signing and executing the instrument. This is so held, in effect, in Souverbye v. Arden, 1 Johns. Ch. 240, where it is ruled, as has been already said, that the declarations of the intention or understanding of a grantor, different from the intent apparent on the face of the deed, or of a condition annexed to it, to be effectual, must be made at the time of executing it. It is the duty of the grantor, as the chancellor truly says, to speak then, and declare his intentions, if any he has, inconsistent with the natural and necessary result of the solemnity.

"The general principle of law is that the formal act of signing,

sealing, and delivery is the perfection and consummation of the deed; and it lies with the grantor to prove clearly that the appearances were not consistent with the truth. The presumption is against him, and the task is on him to destroy that presumption by clear and positive proof that there was no delivery, and that it was so understood at the time." Blight v. Schenck, 10 Pa. 285, 51 Am. Dec. 478. See also Lady Superior of Cong. Nunnery v. McNamara, 3 Barb. Ch. 375, 49 Am. Dec. 184; Doe ex dem. Newlin v. Osborne, 49 N. C. (4 Jones, L.) 157, 67 Am. Dec. 269.

We are satisfied from the evidence in this case that the note and mortgage involved in this action were executed and delivered to Nichols unconditionally for the purpose of transmitting the same to the plaintiff, and that the instructions on the part of the defendants, attempting to limit the effect of such delivery, were not given until some days subsequent to their execution and delivery. We do not believe that even the testimony of the defendants, taken as a whole, will sustain the contention of the defendants. The testimony of Nichols is to the effect that the defendant Turner came in a couple days after the note and mortgage had been executed, claiming that the amount was not correct.

The defendant Turner, on direct examination, testified in regard to this matter as follows:

Q. I will ask you whether or not you had any conversation with Mr. Nichols within a day or two after you had signed the note and mortgage, instructing him not to deliver the note and mortgage?

A. It was in the fall.

Q. What did you tell him?

A. Me and Mr. Caldwell went in there and instructed him not to deliver the note and mortgage.

And the defendant Caldwell testified as follows: "I told Mr. Nichols not to deliver the note or mortgage until it was satisfactory to all parties concerned, and I told him this some time afterwards, along late in the summer or in the fall some time, I cannot tell you the dates." It appears, therefore, that at the time the note and mortgage were executed, no conditions were attached to their delivery, but this was

an afterthought on the part of the defendants. As these defendants executed the note and mortgage and delivered them to Mr. Nichols for transmission to Judge Coffey, it seems clear that the defendants, after having executed and delivered the notes and mortgage in the manner agreed upon, cannot by subsequent instructions limit the effect of their former acts and be permitted to change an absolute delivery to a mere delivery in escrow. We are satisfied that the findings of the trial court in favor of the plaintiff in this action, that the note and mortgage were executed and delivered to the plaintiff, are sustained by the preponderance of the evidence in the case.

Nor do we think there is any merit in the contention of the defendants that they were induced to execute a note and mortgage for an excessive amount. And as we view the evidence, it is immaterial whether the defendants believed that they were executing a note and mortgage in settlement of the balance due on Exhibit "1," or the balance due on Exhibit "E," as the note and mortgage involved in this action would not in any event exceed the amount which was due to the plaintiff under Exhibit "1." The only payment made to the plaintiff, Stockton, by the defendants, aside from those already enumerated, was a payment for $200 made on June 12, 1912. On June 24, 1912, the defendants Turner and Caldwell executed and delivered the note and mortgage involved in this action. Thereafter Nichols made the following payments to the plaintiff: $2,000 on July 21, 1912, and $2,553.93, on August 5, 1912.

Nichols's testimony in regard to these payments, in response to questions propounded by the trial judge, is as follows:

Q. Mr. Nichols, you have testified as to the payment of $2,000 made the 25th of July, 1912?

A. Yes, sir.

Q. And the payment of $2,553.93 made August 5th, 1912?

A. Yes, sir.

Q. Where did that money come from? .

A. It came out of real estate loans. They had an account, the Turner-Caldwell loan account, and we charged it all up to that account.

Q. *Now, the proceeds of what loans were turned into that account?*

A. *The first three mortgages, on this Jones and Turner-Caldwell land and on the Stockton land.*

Q. You turned the proceeds of the loans on the land that is described in Exhibit "1" and the proceeds of the loan on the land described in Exhibit "E" into the same account, and called it the Turner-Caldwell loan account?

A. Yes, sir; then there was also a second mortgage signed by A. J. Gorthy for something like $3,900, that was turned into that account too.

As already stated, it is conceded by the defendants' own counsel that, on the 6th day of April, 1912, the defendants were indebted to the plaintiff on Exhibit "1," and the notes described therein, in the total sum of $7,851.93, or $3,251.93 more than was realized from the first mortgage loan of $4,600. So far as the evidence in this case shows, the only thing which the defendants did in the way of raising money to pay off this indebtedness was by means of the mortgages placed on the lands; and there is also some testimony which indicates that the $200 paid on June 12, 1912, were the proceeds of a personal note given by Turner and Caldwell to the bank. Although, on the other hand, Nichols and Coffey testify that this was an advancement made by the bank. If the defendants be given credit for the proceeds of the first mortgage for $4,600 and the $200 payment, there would still remain a balance due on Exhibit "1" after the application of these payments, exceeding $3,000. There is not one word of testimony in the record to show that the defendants Caldwell and Turner contributed one cent of money in any other manner than that above indicated. Defendants' own counsel contend that the $2,000 payment made by Nichols on July 21, 1912, must have been derived from some other source, as the loans made by Gorthy had not been completed at that time. In order for us to sustain this contention we would have to absolutely disregard the testimony of Nichols, and we would have to so find without one word of testimony to sustain our findings. It seems self-evident that if the defendants Caldwell and Turner had contributed $2,000 or any part thereof, testimony to this effect would have been produced. It may be observed that, so far as the $200 payment is concerned, that considerable testimony was offered to show that this was derived, not from the proceeds of the loans, but from a personal note given by Turner and Caldwell to the bank, and, if they

had procured any other money in any other way than from the mortgages, doubtless testimony would have been produced to show this fact. It is rather singular that all four defendants answered jointly, and also took a joint appeal from the judgment, and still the sole argument for a reversal of the judgment is predicated on the theory that the defendant Gorthy alone should pay a large part of the indebtedness evidenced by the note and mortgage involved in this action. There is absolutely no contention on the part of any of the defendants that the amount of such note and mortgage is not the correct amount due to the plaintiff under Exhibit "E;" the only contention being on the part of the defendants Caldwell, Turner, and Lindberg, that they had no interest in the premises described in Exhibit "E," but that this was the individual transaction of Gorthy, and that the amount is greater than they owed on the contract, Exhibit "1." We are satisfied that these defendants are mistaken in this contention. And under the evidence in this case, all four defendants were doubtless indebted to the plaintiff under Exhibit "1," and the notes described therein, for at least the amount of the note and mortgage involved in this action.

The plaintiff has parted with title to her lands, and released her security. All this has passed to the defendants. She is only seeking payment for that which she has already conveyed.

The judgment rendered by the trial court was right, and is affirmed.