[Filed December 8, 1885.]

## J. M. BLOOMFIELD *v.* W. J. AND I. BUCHANAN AND J. M. LEAVENS.

PARTNERSHIP—CONTRACT OF—PROFITS.—It is not necessary that there should be an express stipulation to share profit and loss in order to constitute a partnership. If it were understood between the parties that there was to be a communion of profit, that would be a partnership.

SAME—EVIDENCE.—The evidence reviewed, and held to show a partnership.

MULTNOMAH COUNTY. Plaintiff appeals. Reversed, and remanded for an accounting.

*C. E. S. Wood* and *N. H. Bloomfield,* for Appellant.

*F. R. Strong* and *R. S. McKee,* for Respondents.

THAYER, J.   This suit was brought to establish a part-nership between the parties concerning certain contracts with the United States to furnish supplies to the posts of Vancouver Barracks and Fort Canby, in Washington Territory, and Portland, Oregon; also to obtain a share of the profits made from said contracts. It was alleged in the complaint, that on or about April 1, 1884, the appellant entered into an equal copartnership with the respondents, by parol agreement, for the purpose of bidding for and fulfilling said contracts; that the con-

tracts were to be bid for by the respondents respectively, said W. J. Buchanan to bid for the Vancouver contract, Isaac Buchanan for the Fort Canby contract, and John M. Leavens for the Portland contract, and that the said appellant should give his personal attention to the fulfillment of the two former; that the profits and losses were to be divided and borne by the said four copartners equally; and that profits had been realized from the said contracts. The respondents severally denied the copartnership as between any of the said parties, and the respondents W. J. and Isaac Buchanan each alleged in his answer that the appellant was employed in and about his contract as purchasing agent.

The case was referred to a referee to take the evidence, and find the conclusions of fact and law. A great mass of testimony was taken by the referee, a portion of which bore directly on the point in issue, but a larger part by far was directed to collateral matters, and to contradiction upon slight affairs. The counsel upon both sides, at the hearing, laid very great stress upon the alleged discrepancies in the testimony of the parties given in the case. The testimony shows that the contracts were let to the respondents, severally, about the 20th of May, 1884; that the bids therefor were severally made by said respondents; that the appellant was not named in the bids or contract; that during the previous season, extending until the last of May, 1884, the appellant worked for Burnell & Co., of which Leavens was a member, in buying produce to fulfill a similar contract let to said company to supply forts Canby and Stevens, for which he claimed that they were to give him one half of the profits, though they claim that they were to give him a certain sum per month therefor; that for more than three months the appellant gave his personal attention to fulfilling the Vancouver and Fort Canby contracts in

question, and that Leavens also gave his attention to the same business. It appears that the respondents Isaac and W. J. Buchanan were boatmen, engaged in business on the Columbia and Willamette rivers, and that they gave but little attention to said matters. Leavens is a commission merchant residing at Portland. The appellant was flatly contradicted by each of the respondents as to his being a partner in the contracts, or having any interest in the business; and if the determination of the suit rested simply upon appellant's assertion of the fact and respondents' denial of it, we unhesitatingly would affirm the decree appealed from. That would present a case of one witness against three, and each entitled to at least the same degree of credit. In such a case, the party having the affirmative could not reasonably claim to have established the fact in issue by a preponderance of proof, and would necessarily fail to maintain his suit. Cases, however, do not always depend upon the general credibility of witnesses. The evidence of one person may, ordinarily, be as good as that of another, and yet their respective testimony in a particular case not have equal value. The Civil Code recognizes this, and provides that " they [the jury] are not bound to find in conformity with the declarations of any number of witnesses which do not produce conviction in their minds against a less number, or against a presumption, or other evidence satisfying their minds." (Code, sec. 835, subd. 2.)

From a close inspection of the evidence, it will, I think, be found that the facts testified to by the appellant, in regard to the formation of the partnership, are not successfully controverted by the testimony of the respondents. Their assertions that the appellant had no interest in their respective contracts; that he was only an employee; and that any evidence he had given, or any conversations he had stated, showing, or attempting to

show, that he was a partner in the business were not true—were more in the nature of conclusions than the denial of facts.   The appellant had testified to his talk with Isaac Buchanan in March of 1884, at the St. Charles saloon, about the probable advantages of contracts of that character for the ensuing year; his talk with Captain Buchanan a few days afterwards upon the same subject, and of his having advised the captain to go in with him (appellant) and take the contracts for that year; his subsequent talk with Leavens upon the subject, and about Burnell's proposition to get him security, and of going in with him, and of Leavens's disparagement of Burnell, and proposal to go in himself; his proposal to see Blurock, and get him to take the Vancouver contract, and he and the appellant take the contracts below at forts Canby and Stevens; and to various other detail matters as having taken place, and resulting in obtaining said contracts, and of his continuance to fulfill them for several months.   He gave a complete narrative of the affair, and of the part he acted in it.   The account he gave embraced a great number of steps that were taken, and the incidents which occurred in securing the contracts, and the part he performed in carrying them out.   The statement is a very consistent one, to my mind.   The evidence in regard to the standing of the appellant, his experience in life, business qualifications, and connections, shows very clearly that he was the kind of man who would be likely to engage in taking such government contracts, and who would be useful in securing and fulfilling them; and his statement of the minute facts attending the bidding for and obtaining the contracts in question, is not to be brushed away by a bare denial that he had any interest in them.   What is there unreasonable about his story?   The respondent says he had no capital or credit.   The former was not needed.   No

money would ordinarily be required to be advanced until received from the quartermaster; and the lack of credit may have been the inducement to enter into the partnership. They say his character was bad, but they trusted him—employed him, they say, as a purchasing agent. Their denial of his possessing business qualifications may be answered in the same way.

But the most difficult question, to my mind, in view of the evidence, is to understand what relation the appellant maintained with the respondents in the affair, if he was not a partner. They deny that he had any proprietary interest in the venture, but have failed to make any satisfactory explanation as to the *status* he occupied. That he was a purchasing agent affords no solution of the question. He may have been that, and at the same time a partner. The respondents emphatically assert that he was *only* a purchasing agent, but how do they prove it? They do not say when or where they employed him in that capacity, nor anything as to the compensation they were to pay him. I think the evidence fails to show that he was at work for wages. It tends to show, upon the contrary, that the respondents were induced by the appellant to take the contract—that he was the active, moving spirit in the enterprise. The respondents' counsel claims that the appellant's testimony fails to show a partnership—that he does not use the term "partnership," nor say anything about bearing the losses. I do not think the word "partnership" need be used in order to create that relation between parties, and I very much doubt whether the question of loss ever entered the minds of parties bidding for government contracts. However that may be, it is sufficient if that obligation would attach under the circumstances of their arrangement, though the rule would, no doubt, be different if it were stipulated that a party should receive a share of the profits as a

compensation for services of such party to be rendered in conducting the business. An agreement between two or more parties to engage jointly in the business of supplying a government post might constitute a partnership, although the term were not used, nor any express mention made, in regard to profits or losses. If it were understood between the parties that there was to be a communion of profit, it would be a partnership. "A communion of profit implies a communion of loss; for every man who has a share of profits of a trade ought also to bear his share of the loss." (Collyer on Partnership, sec. 18.) And it is not necessary that there should be an express stipulation between partners to share the profit and loss, as that is an incident to the prosecution of their joint business. (Id., note 3.) If the respondents had shown by satisfactory proof that the appellant was employed as an agent for wages, they would have established a relation he sustained to them, or some of them, that would have rebutted the appellant's testimony as to his being a partner, but their entire failure to prove that serves to strengthen the appellant's theory of the affair. In view of the admitted circumstances of the transaction between the parties, I cannot discover any other reasonable hypothesis than that they were partners as alleged in the complaint. The acts performed by the appellant, and the interested part he took in the business, rebut any presumption that he was a mere hired agent; and in the absence of convincing proof of facts that he was so hired, leaves no alternative but to conclude that he was expected to participate in the profits to be derived from the contracts. Nor can I discover any reason why he should not. He evidently initiated the enterprise, gave his time and attention to prosecuting it, was an important factor in the business, and no sufficient excuse is shown for excluding him from its benefits. This review

only extends to the one question, Was the appellant a partner and entitled to share in the profits arising from the contracts in suit? That is the only question considered by the court below, and as that court determined that no such partnership existed, no accounting was directed, and none has been had. This court having taken a different view of the question, the decree appealed from will have to be reversed, and the case sent back for an accounting, and with directions that the said respondents do each of them account in such manner as the court below may direct for the amount of profits realized from the said contracts, and that when the same shall have been ascertained, a decree be entered in favor of the appellant for the recovery of a fourth thereof. The same rule will be observed in this case as that adopted in *Cogswell* v. *Wilson*, 11 Or. 371.

I have not deemed it necessary to refer in this opinion to the various questions contended for and controverted in the evidence. It would have been almost an endless task to have done so, and been of no material benefit. I have looked over the testimony with considerable care, and am satisfied that the equities are with the appellant so far as his being entitled to share in the profits arising out of the several contracts, and that the bidding for and taking said contracts were in pursuance of an understanding between all the parties that they should be jointly interested in them, and divide the profits equally, if there are any. I think the evidence shows that profits have been realized, but it requires an accounting to ascertain the amount. A decree will be entered in accordance with this opinion, and the case remanded for such purpose.