[Filed December 7, 1887.]

## JOHN F. KELLEY, APPELLANT, v. JONATHAN BOURNE, JR., ET AL., RESPONDENTS.

DEED—GRANTEE.—In every deed or grant there must be a grantee named, or be ascertained by description, so as to distinguish him from all others.

PARTNERSHIP CONSIDERED AND DEFINED.—A partnership is a combination by two or more persons of capital, labor, or skill for the purpose of business, for their common benefit.

CASE IN JUDGMENT—PARTNERS INTER SE.—The parties signing the agreement creating the "Grant's Pass Real Estate Association" became partners inter se, for all the purposes stated in the writing.

PARTNERSHIP NAME.—Every partnership should have its proper name or style. It may be whatever name the partnership chooses; and this name need not be prescribed in the articles, or determined upon by express agreement.

DEED IN PARTNERSHIP NAME.—A deed to a partnership by its firm name is not void.

APPEAL from Josephine County. Reversed.

*Tanner & Carey*, for Appellant.

*S. U. Mitchell*, and *Joseph Simon*, for Respondents.

STRAHAN, J.—This suit is prosecuted to quiet the plaintiff's title to certain real property situated in the town of Grant's Pass, in Josephine County, Oregon. The complaint states the necessary facts to bring the case within section 504 of Hill's Code. The answer denies the allegations of the complaint, and then alleges, in substance, that long prior to the time of executing the plaintiff's deed, viz., in July, 1885, plaintiff's grantors,

H. B. Miller, C. K. Chancellor, Joseph Moss, Solomon Abraham, and T. P. Judson, entered into a certain agreement in writing, by which said parties formed themselves into an association or company for the purpose of buying, owning, holding, leasing, selling, mortgaging, and conveying real property, lands, and tenements in and adjoining the town of Grant's Pass, Josephine County, Oregon; and for the purpose and with the power to carry out the purposes of said association or company, and the agreements of each of the members thereof, all of which were duly and fully set forth in said agreement in writing, and were well known by plaintiff when he acquired his deed as alleged in his complaint. That at the time said plaintiff received his deed from the aforesaid grantors, neither of said grantors had any title to said land, except an undivided equitable interest therein; but said grantors, and each of them, had long prior thereto, viz., the fourteenth day of July, 1885, divested themselves of title to said land by duly executed deeds of conveyance thereof to the said Grant's Pass Real Estate Association, duly witnessed, acknowledged, and recorded, all of which plaintiff well knew at the time he received his alleged deed from said pretended grantors.

The said grantors, H. B. Miller, C. K. Chancellor, and Joseph Moss, were members, stockholders, and copartners with Solomon Abraham and T. P. Judson in said association, and that Solomon Abraham and T. P. Judson entered into the organization thereof with said H. B. Miller, C. K. Chancellor, and Joseph Moss in good faith; and in consideration of the deed of H. B. Miller, Mary L. Miller, C. K. Chancellor, and Joseph Moss of the land above set forth and described in plaintiff's complaint, the said Solomon Abraham and Julia Abraham, his wife, executed and delivered to the said association, for the benefit of all the members thereof, including the plaintiff's grantors, as plaintiff well knew, their certain deed of conveyance, duly witnessed and acknowledged, and which deed was afterwards duly recorded in the office of the county clerk of said county, by plaintiff's said grantors, for the benefit of said association, to all the following described real estate, viz: (Here follows descrip-

tion of lands attempted to be conveyed by Abraham to the association.) That at the same time, T. P. Judson and Jennie Judson, his wife, in consideration of the deed of plaintiff's said grantors to said Grant's Pass Real Estate Association of the land above set forth and described in plaintiff's complaint, for the benefit of defendant and other members thereof, also executed and delivered to said association their certain deed in writing, conveying to said association, for the benefit of all the members thereof, all the following-described pieces and parcel of land, viz.: (Here follows description of lands attempted to be conveyed by T. P. Judson, to the association.) That said T. P. Judson executed said deed in good faith and for the purposes for which said association was formed by said H. B. Miller, C. K. Chancellor, Joseph Moss, Solomon Abraham, and T. P. Judson. That said H. B. Miller and C. K. Chancellor, Joseph Moss, Solomon Abraham, and T. P. Judson, acting as said Grant's Pass Real Estate Association, and each individual member thereof for himself, did, on the fourteenth day of July, 1885, make, execute, and cause to be recorded in the office of the county clerk of Josephine County, their certain power of attorney, making and constituting A. A. Porter and C. K. Chancellor, two of the defendants herein, the attorneys in fact for each of said parties constituting said Grant's Pass Real Estate Association, giving full power and authority to said attorneys in fact to sell the real estate of said association, to make contracts with purchasers of said property, and to receive payments thereon, and to do all things necessary in connection with selling and binding the conveyance of the same. That J. Bourne, Jr., is the successor in interest of Solomon Abraham in the property of said association, by and through the assignment of said Solomon Abraham. Wherefore, defendants pray the court for a decree setting aside, canceling, and forever annulling the deed from H. B. Miller and Mary L. Miller and C. K. Chancellor and Joseph Moss, to John F. Kelley, and that this suit be dismissed, and for costs and disbursements, and for such other and further relief in equity as to the court may seem meet and proper.

There were some other matters set up in the answer, but they were on motion stricken out. The reply denies the allegations of the answer. The evidence was taken in writing in the court below, and accompanies the transcript. The entire case is therefore before us for examination.

Without particularly noticing the evidence offered on the part of the plaintiff, it may be sufficient to say that it would entitle the plaintiff to the relief demanded, unless his right thereto is defeated by the new matter set up in the answer, and the evidence offered in support thereof. Our attention, therefore, will be first directed to that part of the case.

1. Among other items of evidence offered by the defendants is an agreement in writing signed by Solomon Abraham, H. B. Miller, C. K. Chancellor, Joseph Moss, and T. P. Judson, dated July 11, 1885, whereby the Grant's Pass Real Estate Association was formed. The substance of that agreement is as follows: "Know all men by these presents, that the undersigned, Solomon Abraham, H. B. Miller, C. K. Chancellor, Joseph Moss, and T. P. Judson, all residents and citizens of the State of Oregon, have, for mutual benefit and profit, formed, and by these presents do form themselves into an association, under the name of 'The Grant's Pass Real Estate Association.' The purposes of this association are, and shall be, *in the* name and for the use and benefit of said association, to buy, purchase, own, hold, improve, lease, sell, mortgage, and convey real property, lands, and tenements in and adjoining the town of Grant's Pass, in Josephine County, State of Oregon; and to do and perform all and every act and thing in and about the premises requisite and necessary for the purposes above mentioned. In all purchases, sales, and proceeds of the same, leases, rents, and profits, of property hereunder required, sold, leased, or conveyed, the interest of the respective parties to this instrument and agreement shall be as follows, unless otherwise expressly stated and specified to the contrary; that is: The interests of Solomon Abraham shall in all things herein mentioned be seven fourteenths; the interest of H. B. Miller, C. K. Chancellor, and Joseph Moss together shall be six fourteenths; and the interest

of T. P. Judson shall be one fourteenth. This contract and agreement shall go into effect upon the full and final signing of the same." It was signed and sealed by all the parties thereto, on the day above specified.

On the fourteenth day of July, 1885, T. P. Judson and wife made a deed to the Grant's Pass Real Estate Association, whereby they attempted to convey certain real property in the town of Grant's Pass to said association. On the same day H. B. Miller and wife, Chas. K. Chancellor, and Joseph Moss made a like deed to certain other real property in said town to said association; and on the thirteenth day of July, 1885, Solomon Abraham and wife made a deed to said association, attempting to convey to it another parcel of land situated in said town. On the sixteenth day of January, 1886, Solomon Abraham and wife conveyed all their interest in the real property of the Grant's Pass Real Estate Association to the defendant Jonathan Bourne, Jr.; and on the twenty-fourth day of August, 1886, H. B. Miller and wife, C. K. Chancellor, and Joseph Moss conveyed to the plaintiff the same real property which they had theretofore included in their deed to the Grant's Pass Real Estate Association. The land described in this last-named deed is the only land in controversy in this suit.

It is claimed by appellant's counsel that a deed without a grantee named therein is simply void, and that the attempted conveyance to the Grant's Pass Real Estate Association was ineffectual to create any interest whatever in the real estate attempted to be conveyed, either in the association collectively, or the individuals composing it. To sustain his contention he cites these cases: *German Land Association* v. *Scholler,* 10 Minn. 331; *Sloane* v. *McConahy,* 4 Ohio, 157; *Jackson* v. *Cory,* 8 Johns. 385; *Trustees Baptist Association* v. *Hart's Ex'rs,* 4 Wheat. 1; *Kain* v. *Gibboney,* 101 U. S. 362; *Zeissweiss* v. *James,* 63 Pa. St. 465; *Harriman* v. *Southam,* 16 Ind. 190; *White* v. *Howard,* 46 N. Y. 145; *Bundy* v. *Birdsall,* 29 Barb. 31; *Marx* v. *McGlynn,* 88 N. Y. 357; 3 Washburn on Real Property, 264, 265. Many of these cases hold, in effect, that a voluntary association of persons unincorporated have no legal capacity to take

or hold real property. And it is elementary law that in every deed or grant there must be a grantee named or be ascertained by description so as to distinguish him from all others. (*Simmons* v. *Spratt*, 20 Fla. 495; *Jackson ex dem. Potter* v. *Sisson*, 2 Johns. Cas. 321; *Webb* v. *Den*, 17 How. 576; *Thomas* v. *Inhabitants of Marshfield*, 10 Pick. 364; *The Ministers and Elders* v. *Veeder*, 4 Wend. 497; *Douthitt* v. *Stinson*, 63 Mo. 263; *Winslow* v. *Winslow*, 52 Ind. 8.) But under the facts disclosed by this record, it is not perceived how these authorities aid the plaintiff. Without the contract of July 11, 1885, they would be conclusive as to the invalidity of the deeds; but that contract, we think, renders them inapplicable. It is contended by defendants' counsel that the signing of the agreement of July 11th made and constituted the parties and associates therein partners, under the firm name of "The Grant's Pass Real Estate Association," for the purpose therein defined.

2. A partnership is defined to be a combination by two or more persons of capital, labor, or skill, for the purpose of business for their common benefit (Parsons on Partnership, 6); or in the language of another author: "A partnership, often called a copartnership, is usually defined to be a voluntary contract between two or more competent persons to place their money, effects, labor, and skill, or some or all of them, in lawful commerce or business, with the understanding that there shall be a communion of the profits thereof between them" (Story on Partnership, § 2); or in the language of still another eminent American author: "A partnership is a contract of two or more competent persons to place their money, effects, labor, and skill, or some or all of them, in lawful commerce or business, and to divide the profits and bear the loss in certain proportions." (3. Kent Com. 23.) As to whether the persons signing this agreement were partners *inter se* depends on the intention of the parties to be gathered from the contract. (*Lintker* v. *Millikin*, 47 Ill. 178; *Niehoff* v. *Dudley*, 40 Ill. 406; *Stevens* v. *Faucet*, 24 Ill. 483; *Robbins* v. *Laswell*, 27 Ill. 364; *Outler* v. *Estate of Thomas*, 25 Vt. 73.) This agreement contains every essential element to constitute a partnership, and such was its manifest

purpose. It is true it is not declared in so many words in the agreement itself that such was its purpose, or that such should be its effect; but this was not necessary. The court will declare the legal effect of the agreement. And in this case it was to constitute the parties signing it partners *inter se*, for all of the purposes specified in the writing.

3. But it is claimed on the part of the appellant that conceding this to be so, it does not help the respondents; that the attempt to convey to them by their firm name of "The Grant's Pass Real Estate Association," transferred no interest, either legal or equitable, to the individuals composing the firm, in the real estate included in said deeds. It is not questioned but what partnerships may be formed and exist in this State for the purpose of buying, selling, leasing, and improving real property, or to do any of the things specified in this writing; but the plaintiff's contention is as to what is the proper form or method for carrying into effect such projects. The only objection suggested or urged against the method which appears to have been adopted in this case is, that the persons composing this firm could not acquire an interest in real property in their firm name. "Every partnership should have its proper name or style. It may be whatever name the partnership chooses; and this name need not be prescribed in the articles or determined upon by express agreement." (Parsons on Partnership, 137.) "The law does not require that it should contain the names of all (*Le Roy* v. *Johnson*, 2 Peters, 297), or any of the partners. It may be a name appropriate to a corporation, as the 'Citizens' Bank,' the 'Union Towing Co.,' . . . . or, indeed, any name that the parties see fit to give it, and may change it *ad libitum*." (1 Collyer on Partnership, 287, n. 3.) So in *Crawford* v. *Collins*, 45 Barb. 269, it is said: "This action was properly brought in the individual names of the plaintiffs; they were the persons who composed the firm known as the 'Union Towing Co.,' the real owners of the debt, and the legal holders of the bond. The parties to a partnership may give it just such name as they please; and all contracts, obligations, or notes, made or given to such firm, may be prosecuted in the individual names of its members."

The question is therefore presented for our consideration whether or not the deeds made to the Grant's Pass Real Estate Association vested in the partners composing that association any title, either legal or equitable, to the lands described in said deeds. In other words, is a deed to a partnership by its firm name void? This question must be determined by a reference to the authorities. In *Ferris* v. *Blackledge*, 71 N. C. 492, the deed had been made to "Murray, Ferris & Co.," and not to the partners by their individual names, and it was held that the deed for land was not for that reason void any more than a bond for the payment of money was; that it was a latent ambiguity, which might be explained by parol. It was further said that this mode of making a deed is a careless one, and might be insecure, but the deed was not void. So in *Sherry* v. *Gilmore*, 58 Wis. 324, the same principle is announced. In that case the deed was made to "Gilmore & Ware," and the court held that a firm name is always held sufficient to designate the true name of all the persons composing the firm; that there did not seem to be any reason for holding that a partnership in making a purchase of real estate for the benefit of the firm might not do so in the same manner that they made their other purchases, viz., in the firm name; and to sustain this view the court cited: *Shaw* v. *Loud*, 12 Mass. 447; *Stroman* v. *Rattenbury*, 4 Desaus. Eq. 267; *The Lady Superior* v. *McNamara*, 3 Barb. Ch. 380; *Newton* v. *McKay*, 29 Mich. 1; *Staak* v. *Sigelkow*, 12 Wis. 234–242; *Hogg* v. *Odom*, Dud. (Ga.) 185; to which may be added *Morse* v. *Carpenter*, 19 Vt. 613. So in a recent English treatise (Rules for the Interpretation of Deeds, by Howard Warburton Elphinstom, p. 126) the same rule is thus stated: "Where a firm is made a party to a deed, evidence is admissible to show who in fact constituted the firm at that time." (Lindley on Partnership [4th ed.] 208; *Carruthers* v. *Sheddon*, 6 Taunt. 14; *Maughan* v. *Sharpe*, 17 Com. B. N. S. 443; *Pristwick* v. *Poley*, 43 Law J. Com. P. N. S. 190.)

The general tendency of these authorities is to hold that the name of a partnership is nothing more than a conventional mode

of designating the persons composing the firm, and that such firm may transact all the partnership business in the firm name. Still I have been unable to find an adjudged case where it has been held that a partnership might take the title to land in its firm name, when such firm name did not contain the surname of one or more of the partners. But under any view of the subject, such firm could contract for the purchase of land in its firm name, and if the deeds read in evidence were ineffectual as conveyances of the legal title to the firm, they were valid and binding as contracts to convey, and created an equitable estate in the land described. This equity defeats the plaintiff's suit. Under these deeds this land in equity is a partnership property, and must be dealt with as such.

It follows that the decree of the court below must be reversed, and the suit dismissed, without prejudice to any other remedy which any of the parties may wish to pursue.