Argued 21 December, 1900; decided 4 March, 1901.

## WILLIS *v.* CRAWFORD.

[63 Pac. 985; 64 Pac. 866.]

EVIDENCE OF PARTNERSHIP.

1. Where plaintiff and defendant, attorneys having adjoining offices, contracted to conduct certain litigation and to share the emoluments arising therefrom, and their client was to pay the costs and expenses incurred, the performance of such service did not constitute them partners as to that litigation, in the absence of an agreement to that effect.

ACCOUNTING — ADEQUATE REMEDY AT LAW.

2. Where plaintiff and defendant, who were attorneys, not partners, were employed to prosecute several suits, and plaintiff alleged that defendant misrepresented the amount of fees he received from their client, and fraudulently retained more than his share, plaintiff's bill for an accounting was properly dismissed on the ground that he had an adequate remedy at law.

SUFFICIENCY OF EVIDENCE OF PARTNERSHIP.

3. Where two attorneys, not partners, agreed to conduct litigation for a third party and divide the fees, and plaintiff in a suit against defendant for an accounting did not allege that there was any intention of either to form a partnership, proof of independent facts from which such relation might be inferred is wholly insufficient to establish the fact of a partnership.

From Douglas: H. K. HANNA, Judge.

This is a suit by Wm. R. Willis against Andrew M. Crawford to dissolve an alleged partnership and for an accounting. The transcript shows that one J. T. C. Nash was the

owner of a mine in Douglas County, Oregon, which he sold
to the Victory Placer-Mining Company, a corporation, re-
ceiving therefor its bonds in the sum of $90,000, and an as-
signment of a cause of action instituted by one W. H. Harris
against the International Nickel-Mining Company to recover
the sum of $10,000. A cross bill having been filed in said
action, making Nash a party, he retained the plaintiff and
defendant as his attorneys, who secured for him the amount
involved, receiving as fees for their services the sum of $350
each. They also commenced a suit for Nash against the
Victory Placer - Mining Company, and secured a decree
making their client's bonds a first lien upon the property so
sold by him. The corporation having made default in the
payment of the interest due on its bonds, and the mine hav-
ing been operated at a loss, actions were commenced against
said corporation by its creditors, whereupon the plaintiff and
the defendant, as Nash's attorneys, intervened, and secured
the appointment of a receiver. A sale of said bonds having
been negotiated for $30,000, of which sum $500 was paid in
cash, and promissory notes of the purchasers thereof were
executed for $5,500, payable April 5 of that year, and $2,000
on the fifth of each month thereafter until and including
April, 1898, Nash, on February 27, 1897, without plaintiff's
knowledge, executed to Crawford a writing promising to
pay him one-third of the purchase price, when paid, in con-
sideration of the latter's service for several years as an at-
torney and in securing the sale of said bonds; and it was
stipulated that from the sum so received Crawford would
pay Willis all sums due him for service rendered Nash. Wil-
lis, on March 29, 1897, received from Nash a check for
$600, and thereafter the defendant paid him the sum of
$150 on account of his attorney fees, the latter having re-
ceived $750 for the same service. The promissory notes ev-
idencing the purchase of said bonds having been paid as they
severally matured, the defendant, in pursuance of Nash's

agreement, received and retained the sum of $8,500. In July, 1898, the plaintiff, having found in the defendant's office, joining his in the same building at Roseburg, Oregon, the memorandum executed by Nash, took possession thereof without the defendant's knowledge, and thereupon commenced this suit, alleging that Crawford was his partner in the trial of said causes for Nash; that the defendant collected all sums paid on account of attorney fees, and falsely represented that he had received only $1,800 therefor; that no settlement had ever been made respecting said attorney fees, and the defendant refuses to render a statement of the terms of the agreement entered into with Nash, or to give a correct account of the sums he has received as fees in pursuance thereof; and praying a decree for one-half the sum which it may be found the defendant has received.

A demurrer to the complaint on the ground that the plaintiff had a plain, speedy, and adequate remedy at law having been overruled, an answer was filed, denying the material allegations of the complaint, and averring that about April 5, 1898, Nash settled with the plaintiff, and paid him the sum of $750 in full satisfaction of his demand, since which time he rendered no service for Nash; and also alleging that the plaintiff has a full, complete, speedy, and adequate remedy at law for the redress of his alleged wrongs. The reply having put in issue the allegations of new matter in the answer, the cause was referred to Ira B. Riddle, who took the testimony, from which the court found that the plaintiff and defendant were partners in the business transacted for Nash; that the defendant entered into an agreement with Nash whereby he received and retained the sum of $8,500, which agreement inured to the benefit of said partnership, and that the plaintiff was entitled to recover from the defendant the sum of $4,250; and, having rendered a decree in accordance therewith, the defendant appeals.

REVERSED.

For appellant there was a brief over the names of *J. C. Fullerton* and *Watson & Beekman,* with an oral argument by *Mr. Fullerton* and *Mr. Edward B. Watson.*

For respondent there was a brief over the name of *Dexter Rice,* with an oral argument by *Mr. Wm. R. Willis, in pro. per.,* and *Mr. Rice.*

MR. JUSTICE MOORE delivered the opinion of the court.

1. It is contended by defendant's counsel that no partnership existed between the plaintiff and the defendant; that, if the latter received any money from Nash to which the plaintiff was entitled, he had an adequate remedy at law for the recovery thereof; and that the court erred in holding that equity had jurisdiction of the cause. It is not alleged in the complaint, and the evidence fails to show, that the plaintiff and defendant were general partners, though each paid one-half the cost of the fuel used and of the rent of the separate rooms occupied by them, and a city license was issued to them as partners to practice their profession as attorneys at law in Roseburg, Oregon, from January 1, 1896, to July 1, 1897; but Crawford testifies, and he is not contradicted in this respect, that the license was issued in the form indicated so as to save the cost of one license. The parties not being general partners in the practice of law, did the joint service rendered by them for Nash establish *inter se* such a special partnership as would authorize a court of equity to assume jurisdiction of the cause by reason of their relation of trust and confidence? A partnership is an agreement entered into between two or more persons to unite their labor, skill, money, and property, or either or all of them, in a lawful enterprise for their mutual account: Story, Partn., § 2; 17 Am. & Eng. Enc. Law (1 ed.), 828; *Cogswell* v. *Wilson,* 11 Or. 371 (4 Pac. 1130) ; *Kelley* v. *Bourne,* 15 Or. 476 (16 Pac. 40) ; *Dawson* v. *Pogue,* 18 Or. 94 (22 Pac. 637, 6 L.

R. A. 176) ; *Flower* v. *Barnekoff,* 20 Or. 132 (25 Pac. 370, 11 L. R. A. 149). Whether the parties are partners *inter se* must be determined in a suit instituted for that purpose, from their intention to enter into that relation, as legally ascertained from their agreement to that effect : 17 Am. & Eng. Enc. Law (1 ed.), 832; *Kelley* v. *Bourne,* 15 Or. 476 (16 Pac. 40) ; *Klosterman* v. *Hayes,* 17 Or. 325 (20 Pac. 426) ; *Nelms* v. *McGraw,* 93 Ala. 245 (9 South. 719) ; *Beecher* v. *Bush,* 45 Mich. 188 (40 Am. Rep. 465, 7 N. W. 785) ; *McDonald* v. *Matney,* 82 Mo. 358. It is not asserted by Willis that they intended to form a partnership, and, in the absence of any testimony in this respect, their intention must be ascertained, if possible, from the evidence of their conduct. .The defendant testifies that no agreement had been entered into whereby the plaintiff was to be paid one-half the money received from Nash as attorney fees, but that he had divided the sums so received equally with Willis until the latter settled with Nash respecting the amount so due him, and was thereupon discharged as his attorney. An agreement between two or more persons to divide the profits resulting from the prosecution of a business venture in which they have a common interest was once regarded as affording an accurate test of partnership; but such standard is not now deemed conclusive evidence of the existence of such relation : *Cox* v. *Hickman,* 8 H. L. Cas. 267; *Mc-Donnell* v. *Battle House Co.,* 67 Ala. 90 (42 Am. Rep. 99) ; *Culley* v. *Edwards,* 44 Ark. 423 (51 Am. Rep. 614) ; *Smith* v. *Knight,* 71 Ill. 149 (22 Am. Rep. 94) ; *Clark* v. *Barnes,* 72 Iowa, 563 (34 N. W. 419) ; *Colwell* v. *Britton,* 59 Mich. 350 (26 N. W. 538) ; *Clifton* v. *Howard,* 89 Mo. 192 (58 Am. Rep. 97, 1 S. W. 26) ; *Eastman* v. *Clark,* 53 N. H. 276 (16 Am. Rep. 192) ; *Day* v. *Stevens,* 88 N. C. 83 (43 Am. Rep. 732) ; *Curry* v. *Fowler,* 87 N. Y. 33 (41 Am. Rep. 343) ; *Harvey* v. *Childs,* 28 Ohio St. 319 (22 Am. Rep.

387) ; *Boston & Colo. Smelting Co.* v. *Smith,* 13 R. I. 27 (43 Am. Rep. 3).

In *Bloomfield* v. *Buchanan,* 13 Or. 108 (8 Pac. 912), it was held that it was not necessary that there should be an express stipulation to share the profit and loss of a business enterprise in order to form a partnership; Mr. Justice THAYER saying, "If it were understood between the parties that there was to be a communion of profit, it would be a partnership." The language thus quoted, when considered by itself, would seem to imply that an agreement to divide the profits of an enterprise in which the parties had an interest necessarily created a partnership; but, when the utterance is read in connection with the context, it clearly shows that such was not the intention of the learned justice, and that the agreement referred to did not defeat the theory of a partnership, when so intended by the parties, because it did not provide for sharing the losses. In *Webster* v. *Bray,* 7 Hare, 159, decided in 1849, two railway companies, having contemplated the construction of a line of railroad, each retained a solicitor to represent its interests; but, the companies having consolidated, the solicitors continued to render services for the new company without any agreement as to the division of the business to be performed by each, or in respect to their compensation therefor. The defendant performed much more service for their client than the plaintiff, and, having received a large sum in payment thereof, the latter instituted a suit for an accounting, alleging that they were special partners, and entitled to share equally the profits incident to their joint employment. At the trial it was proven that the plaintiff remarked to the defendant, soon after their employment by the consolidated company, that in cases of a special partnership it was the custom, so far as he had observed, for the solicitor performing the service to retain from ten to twenty-five per cent. of the sum charged, in addition to the office charges and expenses, as his compensation, and

the defendant replied that there could be no misunderstanding between honorable men respecting the matter, whereupon it was decreed that the sum so received by the defendant should be divided in the manner indicated; thus apparently holding that the existence of a partnership was to be determined from an agreement of the parties to share the profits. To the same effect, see *McGregor* v. *Bainbrigge,* 7 Hare, 164, decided in 1848, and *Robinson* v. *Anderson,* 7 De Gex, M. & G. 239, decided in 1855.

Plaintiff's counsel rely upon the two cases last adverted to, and the remarks of Mr. Lindley in his work on Partnership (2 Am. ed., p. 118), in support thereof, wherein it is said that "If two solicitors, who are not partners, are jointly retained to conduct litigation in some particular case, and they agree to share the profits accruing therefrom, they become partners so far as the business connected with that particular case is concerned, but no further." But the decision in *Cox* v. *Hickman,* 8 H. L. Cas. 267, rendered in 1860, wherein it was held that an agreement entered into between two or more persons to divide the profits resulting from a business venture did not afford conclusive evidence of a partnership, destroyed the foundation upon which the conclusion in *McGregor* v. *Bainbrigge* and *Robinson* v. *Anderson* was predicated, and hence the text relied upon to support the decree herein is of little value in determining the question of partnership *inter se.* Every partner is a principal having a joint interest in the property and business of the firm of which he is a member. He is also an agent of each of his associates therein, and a communion of profit and loss is the test of his relationship towards them: 17 Am. & Eng. Enc. Law (1 ed.), 829. Upon the dissolution of a partnership by the death of a member the right to make contracts, incur liabilities, manage the whole business, and dispose of the whole property, passes to the surviving members, and not to the representatives of the deceased: *Dwinel* v. *Stone,*

30 Me. 384; *Donnell* v. *Harshe,* 67 Mo. 170. In *Finckle* v. *Stacy,* Macn. Sel. Cas. (2 ed.), 40, the plaintiff and defendant performed certain work for the Duke of Marlborough under a joint contract with him, for which they jointly received and immediately divided certain sums of money paid on. account thereof. There being a sum in arrear, however, which the duke refused to pay, the defendant requested plaintiff to join him in maintaining an action to recover the same; but, the latter declining to comply therewith, the defendant brought an action against the duke, and recovered one-half of the sum due under the contract, whereupon the plaintiff instituted a suit to recover a moiety thereof on the ground that a partnership existed between the parties, and that the money which the defendant so recovered was secured on their joint account; but it was held that the joint contract entered into with the duke was an agreement to do a particular act, and not to form a partnership, and that the plaintiff was not entitled to recover. It is elementary, however, that, when the parties have so intended, a partnership may be formed for a single transaction: *Kayser* v. *Maugham,* 8 Colo. 232 (6 Pac. 803); *Solomon* v. *Solomon,* 2 Kelly, 18; *Musier* v. *Trumpbour,* 5 Wend. *274.

In the case at bar the evidence shows that Nash paid all the costs and expenses of the suits and actions in which the plaintiff and defendant appeared as his attorneys, and hence they never expected to share and did not participate in the losses incident to the trial of said causes. They shared the compensation paid by Nash for their joint service, but, as such participation in the joint earnings is not conclusive evidence of a partnership, it cannot be said from this fact alone that they sustained that relation to each other, without being driven to the deduction that the employment of more than one attorney to make preparation for or to try a cause *ipso facto* creates a special partnership,—a conclusion to

38 OR.—34.

which we cannot yield our consent. To hold otherwise is to conclude, in the absence of any evidence to the contrary, that a local attorney, employed only to assist in impaneling a jury, because of his knowledge of and acquaintance with the jurors in attendance, entitled him to an equal share of the attorney fee paid for the preparation required to be made and the care necessarily exercised in the trial of a cause, which would be carrying the doctrine of special partnership to the very verge of absurdity. It was incumbent upon the plaintiff to establish by a preponderance of the evidence the existence of the special partnership relied upon to give a court of equity jurisdiction of the cause; but in this respect we think he has failed. Our statute for the protection of private rights contains the following provision: "The enforcement or protection of a private right, or the prevention of or redress for an injury thereto, shall be obtained by a suit in equity in all cases where there is not a plain, adequate, and complete remedy at law": Hill's Ann. Laws, § 380. A court of equity and a court of law in this state, though presided over by the same judge, are essentially different forums, and the rule is well settled that a court of equity will not grant relief where there is an adequate remedy at law: *Wells* v. *Wall*, 1 Or. 295; *Phipps* v. *Kelly*, 12 Or. 213 (6 Pac. 707); *Miller* v. *Tobin*, 16 Or. 540 (16 Pac. 161); *Love* v. *Morrill*, 19 Or. 545 (24 Pac. 916); *Ming Yue* v. *Coos Bay R. R. Co.*, 24 Or. 392 (33 Pac. 641); *Stemmer* v. *Scottish Ins. Co.*, 33 Or. 65 (49 Pac. 588, 53 Pac. 498); *Denny* v. *McCown*, 34 Or. 47 (54 Pac. 952).

2. Having concluded that no partnership, either general or special, existed between the parties, the important question to be considered is whether the plaintiff has a plain, adequate, and complete remedy at law. In *Dawson* v. *Gurley*, 22 Ark. 381, it was held that an agreement entered into between several persons to divide, when received, a reward offered for the apprehension of a fugitive from

justice, did not constitute a partnership, and that, if one of the parties to the agreement received the entire reward, he was liable to each of the others for his proportion in an ac-. tion for money had and received. So, too, in *Hurley* v. *Walton,* 63 Ill. 260, it was held that the joining of two or more persons in a single adventure, in which the profits were to be equally divided, does not constitute them co-partners in such a sense as will oust a court of law of jurisdiction in respect thereto. If it be assumed that the money which the defendant received was paid on account of the services rendered by the parties, the plaintiff has a plain, adequate, and complete remedy at law in an action for money had and received to his use, and hence a court of equity never had jurisdiction of the cause. It follows from these considerations that the decree is reversed, and the suit dismissed.

REVERSED.

Decided 4 March, 1901.

ON MOTION FOR REHEARING.

Mr. Justice Moore delivered the opinion.

3. In the petition for a rehearing of this cause it is contended by plaintiff's counsel that this court placed too much reliance upon the defendant's testimony, and hence erred in reversing the decree of the court below and dismissing the suit. It is proper to say that having concluded that the relation of partners did not exist between the parties, and that the plaintiff had an adequate remedy at law, to avoid any prejudice that might result in an action in that forum from a comment upon the testimony, a review of that given by either party was studiously avoided, except where it was uncontradicted, or where that given by one party was tacitly admitted by the other. The averment in the answer that the plaintiff had a full, complete, speedy, and adequate remedy at law for the redress of his alleged wrongs was treated

in the nature of a demurrer to the evidence, in view of which plaintiff's testimony only was considered; and deeming it, for the purpose insisted upon, to be true, we concluded that it was insufficient in law to prove the existence of a special partnership. Nash, being the party in interest, was obligated to pay the costs and expenses incurred in the suits and actions in which the plaintiff and the defendant were retained, and hence the business in which they were engaged was not in any sense a venture. They were not expected to participate in any gains or to share any losses, but to divide the fees which were earned by them as compensation for the performance of their professional duties. The lower court, in decreeing the existence of a partnership, probably relied upon the rule promulgated by Mr. Lindley in his work on partnership (volume 1 [2 Am. ed.], p. *118), and felt constrained to follow the seeming approval thereof in *Bloomfield* v. *Buchanan*, 13 Or. 108 (8 Pac. 912), but we think that the principle there announced is not conclusive in a suit between parties, one of whom insists that they were not partners. As between them, no partnership could exist without an intention to enter into that relation; and the plaintiff does not even testify that such was their purpose, but seeks to establish a partnership by the proof of independent facts from which the principal fact is inferable. This would allow a party upon whom the duty of proving the existence of an intention to enter into a partnership devolved to prove the rights of a stranger who had relied upon their conduct in entering into a contract with one of them as evidence of that relation. The plaintiff knew whether it was their intention to form a partnership, and, if such an intention existed, it was his duty so to testify; and, having failed in this respect, we are compelled to overrule the petition.

REHEARING DENIED.