Argued April 6, decided May 9 ; rehearing denied July 5, 1911.

## CHAUNCEY *v.* WOLLENBERG.

[115 Pac. 419.]

PARTITION—TENANCY IN COMMON—POSSESSION.

Under the statute (B. & C. Comp., § 435), as existing prior to amendment of February 23, 1909 (Laws 1909, p. 136), by striking out the bracketed words, providing "when several persons hold [and are in possession of] real property as tenants in common, * * any one * * of them may maintain a suit for the partition of such real estate," a tenant in common not in actual possession cannot maintain a suit for partition against his co-tenants in possession and holding adversely to him, but he must first regain possession by action if necessary ; the distinction between suits in equity and actions at law still obtaining, under Sections 1, 389, L. O. L., so that the right of possession cannot be tried in the partition suit.

From Douglas: GEORGE H. BURNETT, Judge.

Statement by MR. JUSTICE MOORE.

This is a suit by George H. Chauncey against H. Wollenberg and others to partition land. The facts are that pursuant to an act of Congress the United States granted to Aaron Rose and to his heirs the north half of a donation land claim in Douglas County, and to his wife, Sarah Rose, and to her heirs, the south half thereof. Mrs. Rose died December 15, 1866, seised of the land so granted to her, except such parts thereof as she and her husband had conveyed, which tracts are not involved herein. At

her death she left surviving her husband, four brothers, and six nephews and a niece, the issue of a deceased brother. After her death, Aaron Rose continued in possession of the remaining part of the south half of the donation land claim, and secured from her four brothers and from all the children of her deceased brother except Chapin Chauncey and the plaintiff, George H. Chauncey, deeds conveying to him their respective interests in the premises. The greater part of this land was laid out and platted by Mr. Rose as Roseburg, and its additions, and lots, blocks, and certain unsurveyed tracts therein were sold and conveyed by him. He died March 1, 1899, and, his estate having been settled, all the remaining land of which Mrs. Rose had died seised was sold and conveyed by her husband's administrator. Chapin Chauncey died, and the plaintiff, asserting in his own right and as heir of and by conveyance of the other heirs of such brother two-thirty-fifths of the land of which his aunt had died seised, commenced this suit February 23, 1909, making the owners of the separate parcels so conveyed parties defendant. An amended complaint was filed October 11, 1909, alleging, in effect, that the plaintiff and the several defendants are owners in fee and in possession as tenants in common of all the land in question; that Sarah Rose died seised thereof, leaving as her sole heirs the persons hereinbefore referred to; that at her death the real property became subject to Aaron Rose's life estate which terminated March 1, 1899, whereupon the remainder in fee passed to him and to his brother Chapin; that the land had been divided into many small tracts, and is now owned in fee by the several defendants in common with the plaintiff; that their respective interests therein, so far as known, are thirty-three-thirty-fifths, while he is the owner in fee of an undivided two-thirty-fifths. The name of each defendant is then given with a particular description of the parcel of land conveyed to him.

The answer of J. W. Perkins, which is a pattern of all the other answers except as to a description of the tract involved in each pleading, denies the material allegations of the complaint, and alleges, in substance, that such defenadnt is the owner of certain land, and that he and his predecessors in interest for more than 10 years prior to the commencement of this suit had been in the continuous, open, notorious, exclusive, hostile, and adverse possession of the premises described, claiming to be the owner thereof in fee under deeds conveying an absolute title.

Replies having put in issue the allegations of new matter in the several answers, the cause was tried, resulting in a decree dismissing the suit, and the plaintiff appeals.

AFFIRMED.

For appellant there was a brief over the names of *Mr. Commodore S. Jackson, Mr. F. O. Butt* and *Mr. Robert G. Smith,* with oral arguments by *Mr. Jackson, Mr. Smith* and *Mr. R. T. Harding.*

For respondents there was a brief over the names of *Messrs. Coshow & Rice, Messrs. Fullerton & Orcutt, Mr. John T. Long, Mr. C. L. Hamilton, Mr. Frank G. Micelli, Mr. Andrew M. Crawford, Mr. John A. Buchanan, Mr. William D. Fenton, Mr. Rufus A. Leiter, Mr. George W. Jones* and *Mr. Benjamin L. Eddy,* with oral arguments by *Mr. Dexter Rice, Mr. Albert N. Orcutt* and *Mr. Fenton.*

MR. JUSTICE MOORE delivered the opinion of the court.

The trial court found, in effect, that immediately after the death of his wife, Aaron Rose took possession of all the property of which she died seised, claiming and intending to hold the premises exclusively as his own, ousting and excluding all persons therefrom, including plaintiff; that he conveyed lots, blocks, etc., by deeds purporting to grant a fee-simple title in severalty to the grantees, who thereafter maintained exclusive and adverse

possession thereof for a period of more than 10 years
prior to the commencement of this suit, and that plain-
tiff never had possession of any part of the land.

The law of descent in force when Mrs. Rose died con-
tained a clause as follows:

"If the intestate shall leave no lineal descendants, such
real property shall descend to his wife, and if the intestate
leave no wife, then such real property shall descend to
his father." Gen. Laws Oregon, as compiled by M. P.
Deady, p. 673.

It is maintained by defendants' counsel that the word
"wife" in the enactment quoted is used in a generic sense
and sufficiently comprehensive to include either spouse,
and, such being the case, at the death of Sarah Rose,
the real property in question descended to her husband,
thereby excluding plaintiff from participating in the dis-
tribution of her estate. The question thus suggested will
not be determined, but the proposition is noted to show
that Aaron Rose and his grantees of the property might
reasonably have so interpreted the statute, and that such
conclusion could have formed the basis of valid claims
of title sufficient to establish a right by adverse pos-
session.

The testimony shows that neither Chapin Chauncey
nor the plaintiff were heard from by their relatives for
about 15 years, and, probably invoking the presumption
that they were dead (subd. 26, § 799, L. O. L.), Aaron
Rose on June 19, 1895, made an affidavit supplemental
to an abstract of title to the premises wherein, referring
to the conveyances made to him by the heirs of his wife,
he deposed as follows:

"That, by procuring the said quitclaim deed from the
Chauncey brothers aforesaid, I became vested with all
the right, title, and interest of the said Sarah to said
land."

The court found, in effect, that in 1881 Aaron Rose
conveyed by warranty deed four lots of Southern addition

to Roseburg, a part of the property in controversy, to the defendant Mrs. M. N. Currier, who at all times thereafter has been in the actual, open, notorious, and exclusive possession thereof, continuously claiming the whole title thereto in fee in her own right and without interruption; that for more than 20 years prior to the commencement of this suit she had kept and was then maintaining on such land a boarding and rooming house; and that after this suit was commenced the plaintiff leased from her a room in such building, paying therefor the usual rent. The plaintiff testified that, at the time of the institution of this suit, he was staying in the north part of Roseburg, but thereafter he obtained a room from Mrs. Currier. We think it satisfactorily appears that on February 23, 1909, plaintiff was not and had never been in the actual possession of any of the real property of which his aunt had died seised. His possession was only constructive, and depended upon the occupancy of the defendants as co-tenants, who, however, without any knowledge of his rights, claimed the fee-simple title thereto in severalty.

The law in force relating to the partition of real property when this suit was commenced was as follows:

"When several persons hold (and are in possession of) real property as tenants in common, in which one or more of them have an estate of inheritance, or for life or years, or when several persons hold as tenants in common a vested remainder or reversion in any real property, any one or more of them may maintain a suit for the partition of such real property, according to the respective rights of the persons interested therein." Section 435, B. & C. Comp.

This enactment was amended February 23, 1909 (Laws 1909, p. 136), by striking out the words in parenthesis above noted (Section 435, L. O. L.), but, not having an emergency clause, this act did not take effect until 90 days from the end of the session at which the same was

passed. Section 28, Article IV, Constitution of Oregon. In construing the statute as it existed at the above-mentioned date, it was held that a plaintiff could not maintain such a suit unless he was in possession of the premises, nor would it lie against a person who was in the actual possession of the land, holding adversely to plaintiff, and that in such case possession must be regained, by action if necessary, before a suit for partition can be sustained. *Windsor* v. *Simpkins*, 19 Or. 117 (23 Pac. 669) ; *Sterling* v. *Sterling*, 43 Or. 200 (72 Pac. 741) ; *Frye* v. *Moffet*, 50 Or. 495 (93 Pac. 353). A text-writer, adverting to the legal principle thus announced, and referring to an adjudicated case, says:

"The law upon this subject is correctly stated in the following extract from an opinion of the New York Court of Appeals: 'Possession usually follows the legal title when no adverse possession is shown, and consequently, when the lands are unoccupied, the possesion will be deemed to be in those having the title; and, when one of several tenants in common is in possession, his possession will, in the absence of any act of ouster on his part, inure to the benefit of all. But even the possession of one of the tenants in common may become adverse by acts of his amounting to an exclusion of his co-tenants; and if he convey the whole of the premises to a third party, and the purchaser takes actual possession, claiming the whole, it is certain that the possession of such purchaser is adverse, and is not the possession of the former co-tenants of his grantor. The moment such adverse possession commences, the holding in common is terminated, and, until the excluded parties regain their possession by the appropriate action, I do not see how they can bring themselves within the provision of the statute or the rule of the common law. It would be utterly incongruous to hold that, where ejectment would lie, the plaintiff has possession which would entitle him to bring partition. The duration of an adverse possession is material upon the trial of the question of title in an action to recover possession, but it cannot be material in determining where the possession was at the time of the commencement of the action. *Florence* v. *Hopkins*, 46 N. Y. 186.' " Freem. Cot. § 447.

It is insisted by plaintiff's counsel, however, that a different conclusion was reached and the correct rule announced in other decisions rendered by this Court. The cases to which attention is called will be examined. In *Ankeny* v. *Blackiston*, 7 Or. 407, 413, Mr. Justice BOISE, in affirming a decree for the partition of land, says: "It is claimed that Thorburn does not allege possession. He alleges that he is in constructive possession, which is sufficient, and this is supported by the facts alleged." The relation of co-tenants to each other is always understood to be friendly rather than inimical, and the acts of one respecting the common property are regarded as being in subordination of the general title, and, based on this postulate, the disputable presumption is deduced that the entry of one co-tenant inures to the benefit of all. "The difficulty of determining whether a given state of facts," says a noted author, "constitutes an ouster of one co-tenant by another may be removed by circumstances or declarations from which the true intent of the party is clearly manifested. If the intent in the mind of the tenant making or resisting an entry is to take or retain the property as his own, and this intent is so clearly manifested by him as to be known to the other co-owners, or as to be noticed by persons of ordinary diligence in attending to their own interests, then there is no longer any reason to presume that the entry was in harmony with the rights of the co-tenants, and it must be conceded that an ouster has been committed." Freem. Cot. § 223. In *Ankeny* v. *Blackiston,* 7 Or. 413, the following declaration is made in the argument of appellants' counsel: "The pleadings in the partition suit show that the parties thereto claimed to hold adversely." As no mention of that fact is made in the opinion, the statement might be disregarded and constructive possession would be sufficient, but, if an adverse right existed, the proposition of law as announced by

the court should be disregarded, as it is not, in our opinion, a correct exposition of the law applicable to the supposed state of facts. In *Farris* v. *Hayes,* 9 Or. 81, 85, another case referred to by plaintiff's counsel, Mr. Justice WALDO, referring to decisions of other courts, correctly states the law, as follows: "But these cases say no more than that the possession of one tenant in common is, presumptively, the possession of all, or that constructive possession, as by delivery of the patent, is equivalent to actual possession, that possession follows the legal title, no adverse possession being shown." Thus it will be seen that, where no adverse right intervenes, a constructive possession of land is a sufficient foundation for a suit for its partition. In *Savage* v. *Savage,* 19 Or. 112, 116 (23 Pac. 890, 891: 20 Am. St. Rep. 795), another case to which notice is attracted, Mr. Justice STRAHAN, speaking for the court, says: "Seisin and possession, as now understood, mean the same thing. To constitute seisin in fact, there must be an actual possession of the land. For a seisin in law, there must be a right of immediate possession according to the nature of the interest, whether corporeal or incorporeal. 1 Wash. Real Prop. 62. Under this view, there can be no seisin in law where there is not a present right of entry. And where the life tenant is in possession, and there being no present right of entry in the remainderman or reversioner, they are not constructively seised, and neither can maintain a suit as plaintiff for partition." This language was employed to define and limit the rights of reversioners and remaindermen to maintain, as plaintiffs, a suit for the partition of real property. In that case there is nothing said that can in any manner abrogate the legal principle that a co-tenant who has been ousted can maintain such a suit. The correct rule, as we deem it, is stated by an author as follows:

"It was never indispensable that plaintiff should be in the actual occupation of the property at the commence-

ment of his suit or action. In contemplation of law, the possession of one co-tenant is the possession of all, unless, in fact, held adversely, and, if no one was in possession, it was constructively imputed to those holding the legal title. Therefore it was never any answer to a demand for partition that the property was not in fact occupied by any person, or was occupied by a third person, or exclusively by defendants; neither having been guilty of an actual or constructive ouster of plaintiff. But neither an action at law nor a suit in equity for partition was intended as a substitute for ejectment, and plaintiff, in the absence of some statute to the contrary, must fail if shown to be disseised, irrespective of whether the adverse possession is that of another co-tenant, or of an entire stranger to the co-tenancy. The common-law and chancery rule upon this subject is gradually disappearing under the influence of the state statutes controlling the subject and the code system committing jurisdiction of actions at law and suits in equity to the same court. Hence, in many of the states, all issues respecting title and possession may be tried and determined in the same proceeding for partition, and therefore, if plaintiff has a right of possession, he may succeed notwithstanding he was disseised when he began his suit." 30 Cyc. 191.

Thus in *Weston* v. *Stoddard,* 137 N. Y. 119, 123 (33 N. E. 62, 63: 20 L. R. A. 624: 33 Am.' St. Rep. 697), under a statute almost identical with ours, it was held that one of several tenants in common could maintain an action for partition, although his co-tenants were in possession, holding adversely, it appearing that the adverse possession had not been in force a sufficient length of time to extinguish plaintiff's title. In deciding that case Mr. Justice MAYNARD, in referring to their statute, says: "Both at common law and under the revised statutes it was the well-settled rule of practice in actions for partition to withhold relief, if it appeared that the title or the right of possession of the plaintiff was disputed, or that he had been actually ousted by his co-tenants. It was not always clear what conduct would be considered in law sufficient to effect an ouster, but

the current of authority in this state prior to 1880 was uniform and unbroken that when a disseisin had been established, although for a period less than that required to extinguish his title, a tenant in common of real property must wait until he had regained possession in an action or proceeding at law before he could insist upon a division of the property between himself and his co-tenants. The two remedies could not be enforced in the same action. There was but one exception to the rule, and that was that where the original jurisdiction of the action was purely equitable, and it had once rightfully attached, it should be made effectual for complete relief, even if it did require the determination of questions of title to real property and of conflicting claims to its possession. * * The existence of this rule was not due to the indisposition of courts of equity to determine issues which were peculiarly within the province of courts of law. It was rather the result of the exceptional character of the method of procedure in partition cases, and had its origin in the practice of the common-law tribunals, which for a long time had exclusive jurisdiction in this class of actions. The writ of partition was a common-law process, and was an available remedy, at least, between co-parceners for over 300 years before courts of chancery assumed jurisdiction of the subject-matter. It was returnable before judges or commissioners, specially appointed to hear the cause and if, upon the return of the writ, it was shown that the plaintiff's title was contested, or that the lands were held adversely, the proceedings were dismissed, or suspended, until the question of title had been otherwise determined. This course was rendered necessary because a trial by jury of an issue involving the title to real property was a matter of common right, of which the citizen could not be deprived by the institution of a proceeding in which that form of trial was not permissible. * * When, by a change of the

fundamental law of the state, the Supreme Court was empowered to administer both legal and equitable remedies, the necessity for the existence of this rule was but partially obviated. The essential nature of actions was unchanged. Partition suits were still regarded as cases of purely equitable cognizance upon the trial of which a jury could not be demanded as a right, and, if permitted to be present, their verdict did not conclude the judgment of the court upon the issues submitted to them. As the constitution secured inviolate the right of trial by jury in all cases where it had theretofore been enjoyed, it was apparent that questions of title could not be tried in those cases without some enabling legislation." The distinction between actions at law and suits in equity was early abolished in the Empire State. Howard's N. Y. Code (3 ed. 1862), § 69. This statute still remains in force. Gilbert's Ann. Code (2 ed. 1910), § 3339. In the partition of real property in that State an issue of fact may be tried by a jury. Id. § 1544. In Oregon, however, a characteristic difference between actions at law and suits in equity obtains (Sections 1, 389, L. O. L.), and, though such causes arising in a circuit are tried before the same judge, the courts over which he presides are essentially different forums. *State ex rel.* v. *Lord,* 28 Or. 498, 532 (43 Pac. 471: 31 L. R. A. 473) ; *Willis* v. *Crawford,* 38 Or. 522, 530 (63 Pac. 866: 53 L. R. A. 904) ; *Abernethy* v. *Orton,* 42 Or. 437, 441 (71 Pac. 327: 95 Am. St. Rep. 774) ; *Cohn* v. *Wemme,* 47 Or. 146, 150 (81 Pac. 981).

In the case at bar the several answers denied plaintiff's possession of any part of the premises, and averred an adverse occupancy of distinct parcels of land by the several defendants, thereby challenging the equitable jurisdiction of the court. The testimony offered on this issue tends to support the defendants' theory and defeats the jurisdiction relied upon by plaintiff, thus showing that

they were entitled to a jury trial to determine their alleged rights, and, such being the case, no error was committed in dismissing the suit.

It follows that the decree should be affirmed, and it is so ordered.

MR. JUSTICE BURNETT, having tried this cause in the lower court, took no part at the trial or in the consideration hereof.            AFFIRMED: REHEARING DENIED.