Argued January 14, modified March 8, rehearing denied April 5, 1927.

# W. W. MYERS *v.* E. D. OLDS ET AL.

### (252 Pac. 842.)

**Partnership—"Partnership" is Combination by Two or More Persons of Capital, Labor or Skill, for Purpose of Business for Common Benefit.**

1. "Partnership" is a combination by two or more persons of capital, labor or skill, for purpose of business for their common benefit.

**Partnership—One may be Held Liable as Partner Where Partnership Actually Existed by Express Agreement, or Where, With His Own Knowledge and Consent, He has Been Held Forth as Partner.**

2. One may be held liable as a partner where partnership existed by express agreement, or where, with his own knowledge and consent, he is held forth as partner to person acting on faith of such act or to public generally.

**Partnership—Declaration of Partner as to Existence of Partnership, not Made in Presence of Alleged Copartner, is not Competent to Prove Existence of Partnership as to Copartner.**

3. Declaration of one partner as to existence of partnership not made in presence of his alleged copartner is admissible as evidence against declarant, but is not competent evidence to prove existence of partnership as to copartner.

**Estoppel—One Setting Up Estoppel by Conduct must Show That He Exercised Good Faith and Due Diligence in Endeavoring to Ascertain Truth.**

4. Party setting up estoppel by conduct must show that he exercised good faith and due diligence in endeavoring to ascertain the truth.

**Partnership—Evidence That Loan was Made to Alleged Partnership Held Insufficient for Jury.**

5. Evidence that plaintiff made loan to partnership, consisting of party with whom he dealt and his two sons, *held* insufficient to go to jury.

**Judgment—Judgment for Plaintiff Held not Conflicting With Verdict That Plaintiff had Agreed to Accept Note and Mortgage Executed in Payment of Account.**

6. Judgment for plaintiff, in action for money advanced to alleged partnership, *held* proper, notwithstanding verdict that there

1. See 20 R. C. L. 800.
2. See 20 R. C. L. 810, 1067.
3. See 20 R. C. L. 1069.

'was an agreement between plaintiff and defendant that chattel mortgage and note executed should be accepted by plaintiff in payment of open account.

---

Estoppel, 21 C. J., p. 1130, n. 60.
Partnership, 30 Cyc., p. 349, n. 1, p. 382, n. 47, p. 391, n. 83, p. 392, n. 84, p. 394, n. 93, p. 408, n. 83, p. 409, n. 91, p. 415, n. 28.

From Clackamas: J. U. Campbell, Judge.

Department 2.

This action was brought to recover $7,048.25, with interest from August 18, 1921. The plaintiff avers that the defendants, E. D. Olds and Orval M. and Dellon W. Olds, his sons, were copartners engaged in business at Oak Grove, Oregon, and elsewhere, as bridge builders and general contractors under the partnership name of E. D. Olds & Sons, and that, at divers times during the operations of defendants, plaintiff loaned to defendants money with which to carry on such business. Paragraph 3 of the complaint avers:

"That, at the times the loans and sums were made and advanced to the said defendants, by their consent, (they) were held out to the world and to plaintiff as partners as aforesaid; that plaintiff knew of such holding out of partners at the time said loans and advances were made, and that he made such loans and advances on the faith thereof."

Defendants Orval M. and Dellon W. Olds, the sons, filed a joint answer denying all the allegations of the complaint, and averred that all the transactions relating to the lending of money mentioned in plaintiff's complaint were between W. W. Myers, plaintiff, and defendant E. D. Olds. Defendant E. D. Olds, answering in his own behalf, admitted that the plaintiff had loaned to him the sums of money set out in plaintiff's exhibit "A," but denied the existence of

the partnership. In his separate defense, he averred that he had satisfied the balance alleged to be due the plaintiff by the execution and delivery to plaintiff of his promissory note in the sum of $7,500, secured by a chattel mortgage. By his reply, plaintiff denied that he had accepted this note in satisfaction of the open account set out in his amended complaint, or any part thereof.

By reason of the many items of account between the litigants, an expert accountant was appointed as referee to examine the accounts of the litigants and report his findings to the court. By stipulation, the questions of partnership and credit by the chattel mortgage were submitted to the trial jury and all other issues left for the determination of the court without the intervention of a jury.

At the conclusion of the plaintiff's case, a motion for nonsuit was made on behalf of defendants Orval M. and Dellon W. Olds, on the ground that plaintiff's evidence failed to prove the allegations of the existence of a partnership. Defendant E. D. Olds filed a motion for nonsuit on the ground that the testimony showed that the plaintiff had accepted the seven thousand five hundred dollar note, secured by chattel mortgage, in payment of his claim against such defendant. Both motions were overruled. Thereafter the jury returned into court the verdict upon the two questions submitted. This verdict reads:

"We, the jury empaneled to try the above entitled action, find:

"First, that the defendants were partners at the time mentioned in the amended complaint on file herein.

"Second, that there was an agreement between plaintiff and defendant E. D. Olds that the seven thousand five hundred dollar chattel mortgage and

note should be accepted by the plaintiff in payment of the open account in that amount.''

The court rendered judgment against the defendants and each of them in the sum of $6,272.08.

The appellant brings up two questions for review:

First, did the court err in denying the motion for nonsuit made by Orval M. and Dellon W. Olds?

Second, did the court err in entering a judgment against the defendant E. D. Olds?        MODIFIED.

For appellants there was a brief and oral arguments by Mr. *Philip Hammond* and Mr. *Alfred P. Dobson.*

For respondent there was a brief over the name of *Messrs. Earle C., C. D. & D. C. Latourette,* with an oral argument by Mr. *Earle C. Latourette.*

BROWN, J.—We will take up the questions in the order in which they are set out above.

1. In this jurisdiction, a partnership is thus defined:

"A partnership is * * a combination by two or more persons of capital, labor, or skill, for the purpose of business for their common benefit." *Kelley* v. *Bourne,* 15 Or. 476 (16 Pac. 40).

See, also, *Willis* v. *Crawford,* 38 Or. 522 (63 Pac. 985, 64 Pac. 866, 53 L. R. A. 904); *Hanthorn* v. *Quinn,* 42 Or. 1 (69 Pac. 817).

Story on Partnership, at Section 2, gives us the following much-quoted definition:

"Partnership, often called co-partnership, is usually defined to be a voluntary contract between two or more competent persons to place their money, effects, labor, and skill, or some or all of them, in lawful commerce or business, with the understanding that there

shall be a communion of the profits thereof between them.''

2. The plaintiff avers that, at the time the loans were made, they were made with the consent of all the defendants, who were held out to the world, and to the plaintiff, as partners, and that the plaintiff made the loans on the faith of the existence of the partnership. The defendants may be charged as partners on either one of two distinct grounds: First, that a partnership actually existed. Second, that they were, with their own knowledge and consent, held forth as partners to the person lending the money, or to the public generally. Parsons on Partnership (3 ed.), page 66, declares that liability to third persons as a partner may happen in either of two cases: First, one may be an actual partner by express agreement. Second, he may permit himself to be held out to the public as a partner, or he may hold himself out as such partner and thereby induce others to act on the faith of such act or representation.

We will briefly review the testimony adduced to sustain the allegations of the complaint as to the copartnership. The record shows that the plaintiff financed defendant E. D. Olds in the performance of certain road contracts in the State of Washington, defendant thereby becoming indebted to plaintiff in the amount of about $3,500. Thereafter, this defendant secured certain contracts in Oregon, and plaintiff made a series of loans to him for the purpose of financing these contracts. Plaintiff testified that he agreed to advance the money provided defendant E. D. Olds would take his boys into a partnership with him. He further testified:

"Q. Now, will you tell the jury what dealings you had with E. D. Olds in the fall of 1919, about the time the other contract expired in relation to other loans? A. Well, he came to me and wanted me to finance him on the new contracts. That was a bridge down here at Tryon Creek, and the one in Yamhill County, and, as he was behind with me, I had made up my mind I would not finance him any more because he had lost on the other contracts, and he said: 'I am going to take the boys in with me as partners.' * * Well, we just had a gentlemanly agreement that he was to take the boys in with him so I would finance him on the contract. * *

"Q. Did you finance him on the job? A. Yes, sir, clear through to the strict letter, and we had an agreement."

Plaintiff testified to the following conversation with Dellon W. Olds relating to the alleged partnership:

"I was going down to Portland one evening, and he came into the car at Oak Grove. He got on there, and I motioned for him to sit down by me, and he sat down by me and we got to talking. He had been in the hospital and I was talking to him about the hospital, and I spoke up to him like this in the conversation, and I said: 'Well, I am glad your old man took you in as partner. How are you getting along up there?' and he said: 'Well, all right.' * *

"Q. Did you discuss the work any further with him at that time? A. No, I don't think I discussed the whole issue. I just asked him how he was getting along, and he said he thought his father was getting along all right."

At the request of his counsel, plaintiff again repeated the conversation with Dellon W. Olds:

"I said: 'I am glad the old man took you in as a partner,' and he didn't say aye, yes, or no to it. He didn't say he hadn't taken him in as partner, and he didn't say he had. But I asked: 'How are you get-

ting along on the work?' and he said: 'We are getting along very well, I guess.' ''

The plaintiff testified that, long after the loans were made, and only a few days before the institution of this action, he requested Orval M. Olds to come to his attorney's office for the purpose of making a set- tlement and said to him:

''Now I said: 'I understood that you were part- ners in this matter, and if you will come up and the four of you sign a note, we will find out and agree on what you owe me. I can prove it to you in fifteen minutes.' And he said—well, he said: 'I won't.' I said: 'Sign a note for four or five thousand dollars if you want to. In other words, you pay the interest on what we agree, at six per cent, and that is now drawing eight, and I will take your note and you keep the taxes paid up on the place and go on out and take out your bonus.' He said: 'That would jeopardize us from taking contracts.' ''

One L. B. Campbell, at that time in the employ of the State Highway Department as a construction en- gineer, testified that E. D. Olds had told him that ''I have taken Orval in and will teach him the bridge game,'' and that Orval was in charge when his father wasn't there. He testified:

''He ran the crew. He ran the job, and took or- ders from the engineering force, or whatever was al- lotted to him, as I understand it.''

J. D. Anderson testified on behalf of the plaintiff that he was personally acquainted with Orval M. Olds; that he had heard him refer to certain jobs that had been performed, and that he had spoken of them as just ''We''; or, ''When we were at Newberg''; or, ''When we were at Oswego.''

J. D. Butler testified that, somewhere from three to six months previous to the institution of this suit, at

the request of E. D. Olds he drafted for him and Orval a partnership agreement, whereby E. D. and Orval M. Olds were to engage in the contracting business. This, however, was long after the loans were made to E. D. Olds. Moreover, each of the three defendants positively denied the existence of a partnership agreement, and the two sons further denied that they had ever held themselves out as such partners, or knowingly permitted themselves to be held out as occupying a partnership relation with their father, though one of them had acted as foreman as testified by Campbell. The plaintiff further proved that defendant E. D. Olds at one time ordered 500 letterheads, on which appeared the following printed matter: "E. D. Olds & Sons, Oak Grove." However, in the light of the evidence adduced, this fact cannot be regarded as proof of the existence of a partnership. Plaintiff's evidence shows that the loans were made to E. D. Olds. All of the many deposits that plaintiff made in the bank were credited to E. D. Olds individually, and at no time does the account, or any part thereof, appear under the name of E. D. Olds & Sons. The checks drawn against the account were drawn by E. D. Olds, or in his name. In the absence of the father, certain checks were drawn by the son in his father's name. The contracts financed by the plaintiff were in the name of E. D. Olds. The assignments to plaintiff of the amounts due thereon were in the name of E. D. Olds. The chattel mortgage given to secure the seven thousand five hundred dollar note was the mortgage of E. D. Olds, and the note secured thereby was the note of E. D. Olds. It does appear that E. D. Olds did represent to plaintiff and to others that he was going to make a partner out of Orval and perhaps Dellon. However, none of these

declarations were ever made in the presence of the sons, or either of them, nor were they uttered with their knowledge or consent.

3, 4.    The declaration of one partner as to the existence of a partnership, not made in the presence of his alleged copartner, is admissible as evidence against the declarant, but is not competent evidence to prove the existence of the partnership as to the copartner.    Furthermore, it is a rule sustained by the highest of authority that a party setting up an estoppel by conduct must show that he exercised good faith and due diligence in endeavoring to ascertain the truth: *Morgan* v. *Farrel*, 58 Conn. 413–427.    Myers had an opportunity to ascertain the facts relating to the existence of the partnership; but, despite that fact, all he ever did was to say to Dellon, and long after much of the money had been advanced: ''Well, I am glad your old man took you in as a partner.'' This conversation did not take place until August, 1920.    In this connection, we quote the following as peculiarly applicable to the situation:

''The liability of the person claimed to have been held out can only extend to such persons as are thereby led to believe that he is in fact a partner and who gave credit to the firm upon such belief.''    2 Modern Law of Partnership, Rowley, § 907.

Now, note the following from 2 Jones, Commentaries on Evidence (2 ed.), Section 935:

''The necessary foundation to charge one partner with the admission of another is proof of the partnership.    It is very clear that, before one partner can be charged with the admission of another, the partnership relation must be shown—and that by other evidence than the admission itself. * * The admission, *per se,* can be received only to affect the person

making it. It becomes admissible against the partnership as such, or against other partners, only upon such proof of the relationship as makes plain the probative connection."

5. The plaintiff's proof fails to substantiate his averment that the loans were made to the alleged partnership. He fails to show that a single dollar was ever advanced to, or received by, the alleged partnership. It follows that the motion for nonsuit made by Orval M. and Dellon W. Olds should have been allowed.

6. While the trial court seems to have determined the case against E. D. Olds on the ground that his answer failed to allege a defense, and entered judgment against him notwithstanding the verdict asserted to be in his favor, yet the decision reached by the court is not repugnant to the verdict as we construe it. At all events, we are satisfied that the correct conclusion was reached in rendering judgment against him.

As to defendants Orval M. and Dellon W. Olds, the judgment of the trial court will be reversed and nonsuit allowed. The judgment against defendant E. D. Olds should be affirmed. It is so ordered.

AFFIRMED.

BURNETT, C. J., and BELT and COSHOW, JJ., concur.