Argued January 26, reversed and remanded February 16, 1955

## STUART ET AL. *v.* DENTON ET AL.

280 P. 2d 351

*Hugh B. Collins*, Medford, argued the cause and filed briefs for Appellants.

*Sidney A. Milligan* argued the cause for Respondents. On the brief were Milligan & Brown, Eugene, and Albert A. Asbahr, Portland.

Before WARNER, Chief Justice, and TOOZE, LUSK and BRAND, Justices.

LUSK, J.

The plaintiffs have appealed from a judgment based on a directed verdict for the defendants, James C. Denton and Albert A. Asbahr, in an action in assumpsit.

The complaint alleges that the plaintiffs, Miles Stuart, B. L. Wood and William Thorndike, co-partners doing business under the name of Tru-Mix Concrete Co., furnished to the appealing defendants and Albert W. Denton (also a defendant) at their special instance and request, labor and materials and the use of equipment of the reasonable value of $6,747.41, of which sum only $4,521.49 had been paid. Judgment was asked for the balance, $2,225.92, with interest. The defendant, Albert W. Denton, defaulted. The other two defendants filed separate answers which were general denials. On the trial plaintiffs attempted to establish that the three defendants were members of a partnership doing business under the name of Denton Construction Co. and that the indebtedness sued on was incurred by the partnership. The trial judge was of the opinion that the evidence was insufficient for this purpose, and therefore directed a verdict for the defendants. The correctness of that ruling is the only question before us.

The record discloses that James C. Denton is the father of Albert W. Denton and Asbahr is a practicing attorney in Portland. James C. Denton had engaged in the contracting business and the construction of roads and highways over a period of many years. In 1947 his son Albert, then aged 23 and recently discharged from the armed forces of the United States, entered the contracting business under the name of Denton Construction Co. The assumed business name certificate which he filed gave the name of no other person than himself. He was awarded a contract to

build a highway in Ashland, and the indebtedness sued on arose out of that job. The goods were furnished to the Denton Construction Co. and the account kept on the books of the plaintiffs in the name of A. W. Denton.

The following facts were developed by the testimony of Asbahr and James C. Denton, who were called by the plaintiffs as adverse witnesses: Albert Denton, using his rights as a veteran, borrowed $5,000.00 from the Reconstruction Finance Corporation and purchased war surplus equipment with which to launch the enterprise. Albert had had no experience in the contracting business. James C. Denton went to work for Albert as superintendent of construction at a salary of $200.00 per week plus expenses. James C. Denton testified that the equipment was put in Albert's name at the suggestion of a representative of the Reconstruction Finance Corporation in Portland. We quote from the testimony:

"A Okeh. When my son was discharged he came home, and he and I went to the Reconstruction Finance Corporation in Portland, and we took this matter up with the officials. I told them we wanted to buy some equipment. They asked my son if he had used his rights since he was discharged, and he told him no, and I discussed that with him. I can't recall the party that was waiting on us. Well, he said in order to get a loan he would like for this equipment to be in Albert W. Denton's name, and he would like for at least fifty-one per cent of all equipment to be in Albert W. Denton's name, so we just agreed to let it all be in Albert W. Denton's name. Albert was borrowing the money, so Albert put through a loan successfully, and I signed the note with my son to get this money. That's how we started. That's how Albert started.

"Q In other words, it was decided to set it up in his name because of the fact he had certain rights as

a veteran to get equipment and that type of thing to run a construction business with?

"A I imagine that's right.

"Q And that was the reason why your name was kept out of it?

"A That was one of the reasons."

It appears that James C. Denton was unable to obtain bonds either for bidding or contractual purposes, and to meet this difficulty Asbahr, who apparently had financial responsibility, entered into a written agreement with Albert to cosign with him "all bond applications and other documents necessary to qualify" Albert "for bidding and contractual purposes on jobs mutually agreed upon by the parties for a period of four years" from March 20, 1947. In consideration of this agreement on Asbahr's part and of legal counsel to be furnished by him in connection with the construction business, Albert agreed to pay to Asbahr, upon the completion of each job, a sum equal to one-half of the net profits realized therefrom. The testimony of James C. Denton indicates that a considerable degree of control over the operation of the business was exercised by him and Asbahr. James C. Denton testified:

"Q Isn't it true that nothing was done without the approval of you and Mr. Asbahr on any of these jobs?

"A That's about right.

"Q Isn't it true that when a great many of these issues were decided your son wasn't even around, and you and Mr. Asbahr decided them?

"A No; I wouldn't say that.

"Q It is true, isn't it?

"A No, it is not.

"Q Your son was always present?

"A I would say yes, in the majority of cases anyway.

"Q Whose idea was it to set up the Denton Construction Company with your son as the owner and operator?

"A That was discussed between the three of us.

"Q Who were the three on this occasion?

"A Asbahr, Albert and I.

"Q What was the purpose of doing that?

"A I don't recall as that was ever discussed— the purpose of it.

"Q There must have been some purpose, wasn't there?

"A I don't recall."

Albert was not called as a witness, and the testimony is somewhat vague as to what part he took in the conduct of the business of the Denton Construction Co.

Homer Bell, office manager of Tru-Mix Concrete Co., testified that in July or August, 1947, James C. Denton and Asbahr came into the office of the Tru-Mix Co., in Medford. Their business at the time had to do with the Ashland highway contract then being performed by the Denton Construction Co. It was Bell's testimony that he had met James C. Denton previously (though he did not know but what he was Albert Denton), but he had not met Asbahr, and that James C. Denton introduced Asbahr to him (Bell) as his partner.

 Upon this and and other evidence in the record not necessary to be detailed, we think that a jury question was presented. The contract between Asbahr and Albert, under which the former was to receive 50 per cent of the profits on contracts is not necessarily evidence of a partnership. *Devereaux v. Cockerline,* 179 Or 229, 243, 170 P2d 727; *Preston v. S.I.A.C.,* 174 Or 553, 565, 149 P2d 957; *Flower v. Barnekoff,* 20 Or 132, 144, 25 P 370, 11 LRA 149. Nor can it be said that the evidence of James C. Denton by itself was

sufficient to establish a partnership, notwithstanding the suspicion that it excites as to the real nature of his and Asbahr's relationship to the enterprise. But the testimony that James C. Denton introduced Asbahr as his partner with the latter's acquiescence is, in view of the circumstances of that incident, evidence of the existence of a partnership between them in the business of the Denton Construction Co. *Myers v. Olds,* 121 Or 249, 257, 252 P 842; *Flower v. Barnekoff,* supra (20 Or 141, 146); *Armstrong v. Potter,* 103 Mich 409, 61 NW 657; 68 CJS 471, Partnership § 53; 47 CJ 722, Partnership § 127. As stated in Corpus Juris, "The statement of one party made in the presence of another and not denied by him that the latter is a partner is properly admissible as evidence tending to show a partnership." *Armstrong v. Potter,* supra, in which the fact that one man introduced another as his partner was held to be evidence of the existence of a partnership, is a case in point. It is not a question of partnership by estoppel, as defendants seem to think. The statement is an admission or declaration against interest, and competent evidence as such, and admissible not only against the declarant but also against Asbahr because he was present and did not deny it. Taken with the other evidence in the case, it constituted substantial evidence in support of the claim of partnership. It was error, therefore, to take the case from the jury. There is no evidence that credit was extended to the defendants in reliance on any representation that Asbahr and James C. Denton were partners. The question is simply whether there is evidence of a partnership in fact:

The judgment is reversed and the cause is remanded for further proceedings in conformity to this opinion.